49 CCPA

**Application of GENERAL ELECTRIC COMPANY.**

**Patent Appeal No. 6829.**

United States Court of Customs and Patent Appeals.

July 11, 1962.

Frank L. Neuhauser, Washington, D. C., and Allard A. Braddock, Bridgeport, Conn., for appellant.

Clarence W. Moore, Washington, D. C., for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

RICH, Judge.

Here for review is the affirmance by the Trademark Trial and Appeal Board of the examiner's rejection of appellant's application to register the word mark VULKENE for "Electrical Wires and Cables," Ser. No. 54,513, filed June 30, 1958, claiming use since February 25, 1958. No special form of the mark is shown.

The application states that appellant "is the owner of the identical mark 'Vulkene' for Filled, Cross-Linked Polyolefin Compositions Useful in Molding Applications and in Other Industrial Arts in Class 6." We take this to mean the only thing it could possibly mean—that appellant had a *registration* issued to it, as owner, for that mark as used on those goods, which are in Class 6 of the schedule of goods and services of rule 6.1 of the Trademark Rules of Practice, 15 U.S.C.A.Appendix, promulgated pursuant to sections 30 and 41 of the Lanham Act, 15 U.S.C. §§ 1112 and 1123, 15 U.S.C.A. §§ 1112, 1123.[1] Class 6 is for "Chemicals and chemical compositions." The present application is for registration in Class 21, "Electrical apparatus, machines and supplies." Appellant filed several specimens of the mark VULKENE as used on electrical wires and cables, all in the form of typewritten tags, which show, inter alia, that a VULKENE cable has VULKENE insulation.

Rejection of the application is based on the prior registration of the word VULCAN in a special form of capital letters so shaped as to fit within the major central area of an elongated diamond-shaped, horizontally positioned space.

This registration, No. 582,609, was issued November 24, 1953, on the Principal Register, to Essex Wire Corporation, Detroit, Michigan, and the goods named in it are "Electrical Building Wires, in Class 21." The statutory basis of the rejection on this prior registration is section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), 15 U.S.C.A. § 1052(d). The examiner's statement of his reasoning thus appears in his answer:

"The goods of the parties here concerned are quite evidently the same since the broader description of applicant clearly includes the more limited field of the registrant. The only basis for an allowance is, therefore, the difference between the word marks 'VULKENE' and 'VULCAN'. The Examiner does not believe that a sufficient difference exists. It is his opinion that there is such similarity in appearance and sound as to create a reasonable likelihood of confusion. Such an opinion is supported by the fact that pronounciation is not a hard and fast matter, but is subject to individual as well as geographical variances."

The board took a similar view in affirming, saying that "right of registration turns on whether or not 'VULKENE' so resembles 'VULCAN' as to be likely to cause confusion in trade." Answering an argument of the applicant, it said further:

" 'VULKENE' as an arbitrary and coined word is susceptible of different pronunciations by different persons; and even assuming 'VULKENE' is pronounced in the manner ascribed to it by the affiant [to rhyme with 'dull teen'], it still is substantially similar in this respect to 'VULCAN'. 'VULKENE' and

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

1. Appellant's brief states that there is such a registration, issued April 9, 1957, on the Principal Register, Reg.No.643,787, but has not made the registration of record. The Patent Office has not denied the statement, neither has it admitted it. In fact it has maintained total silence on the matter, but we assume it takes cognizance of its own records and would have denied an untrue statement.

'VULCAN', moreover, create substantially similar commercial impressions."

We agree that we are presented with a situation in which the goods are "the same" and the marks differ. We think it essential, however, to look with care to see *what* goods are the same. The applicant's statement of goods, being broad, does comprehend the goods of the prior registration, the latter goods being only "Electrical Building Wires." Appellant's brief explains that "Building wire is designed for installation in conduit or the archaic and rarely encountered knob and tube type of installation." The technical experts of the Patent Office have not questioned this explanation or supplied us with any other. Assuming its correctness, the goods for which VULCAN was registered would appear to be of the type normally sold to and used by those who do the electrical wiring of buildings, for the most part licensed electricians and electrical contractors. We believe that such persons would buy their electrical supplies with a reasonable amount of care and with considerable professional know-how as to what they are buying.

■ Section 2(d) does not not require only that when goods are identical we consider merely how much two marks resemble each other in the abstract. It requires that we consider whether, *when the marks are applied to the goods* of the prior registrant and the applicant, respectively, the marks *so* resemble each other that such use would be likely to cause confusion, mistake or deception of purchasers. In view of the overlap in the present case in the description of goods, the marks not being identical, we believe that our concern here is only with the goods in that area of overlap, which goods are building wires. Our problem then becomes one of deciding whether those who buy those goods would be likely to be confused, mistaken or deceived by concurrent use of VULKENE and VULCAN on them as trademarks. Abstract similarity of the marks, or the converse, does not supply us with the

answer, as it has not supplied it in many cases in which we have held, notwithstanding obvious similarity, that there would not be likelihood of confusion. See, for example, among some of our recent decisions, Jones & Laughlin Steel Corp. v. Winter Seal Corp., 291 F.2d 945, 48 CCPA 1070; Jones & Laughlin Steel Corp. v. Jones Engineering Co., 292 F.2d 294, 48 CCPA 1068; New Castle Products, Inc. v. American Door Co., Inc., 291 F.2d 954, 48 CCPA 1036; Servo Corp. of America v. Kelsey-Hayes Co., 289 F.2d 957, 48 CCPA 981; Servo Corp. of America v. Servo-Tek Products Co., Inc., 289 F.2d 955, 48 CCPA 978; Clark Equipment Co. v. Baker-Lull Corp., 288 F.2d 926, 48 CCPA 865; Vita-Var Corp. v. Galvicon Corp., 284 F.2d 953, 48 CCPA 771; Rexall Drug Co. v. Manhattan Drug Co., 284 F.2d 391, 48 CCPA 756; Lever Brothers Co. v. Producers Chemical Service, 283 F.2d 879, 48 CCPA 744.

VULCAN is, we think, a name well-known to the American people. Most of them may not know, or remember if they knew, just who Vulcan was (in Roman mythology he was the God of Fire and of the arts of forging and smelting) but we think the name is commonly recognized as the name of some mythological character or deity. Anyone confronted with it, in other words, would recognize it as something already known —it would not impress itself on his consciousness as anything new or strange, but rather as something familiar. VULKENE, on the other hand, is not such a name or word. As the board itself said, VULKENE is "an arbitrary and coined word." We consider this to be a point of great significance, and one which neither the examiner nor the board appears to have treated as significant. We entirely agree with appellant that "the human mind has little difficulty differentiating between the familiar and the unfamiliar." This is one reason why we believe purchasers of electrical building wires would quickly and easily differentiate between VULCAN and VULKENE. In this respect this case resembles the

Lever Brothers case, supra, where we held "Shux" and "Lux" in concurrent use on very similar goods would not be likely to cause confusion, notwithstanding the obvious similarity of the marks.

There is another factor which leads us to believe that the purchasers concerned with the goods here involved would quickly recognize VULKENE for what it is, namely, a coined trademark. It is an obvious concoction of one syllable from a common word, "vulcanize," and a common ending on the names of many now well-known chemical compounds in everyday use, such as kerosene, neoprene, and, of recent date, polyethylene. Even though the word "vulcanize" was derived from VULCAN (an origin which may be unknown to or forgotten by most people), the fact remains that in this automotive and rubber-shod world, "vulcanize" is introduced into the vocabulary of every child at an early age and any word or mark beginning with "vulc-" or "vulk-" would ring a familiar bell. Also "ene" being the common ending that it is, we believe most people would see in VULKENE, especially when used in connection with insulated electrical wire of the building wire variety, a coined trademark suggestive of some sort of vulcanized chemical compound. (Our information may be based on advice from appellant somewhat dehors the record, but apparently that is exactly what it is.) We do not see why anyone would be confused, by its concurrent use with VULCAN, into thinking the goods had the same source or led into any other mistake or in any way deceived.

The Patent Office Solicitor adds an argument which did not appear in the opinions of the examiner or the board, that "In this day of * * * orders by telephone, and of oral importunings to buy on radio and television," similarity of sound is of added importance. We do not believe building wire is the sort of merchandise likely to be advertised on radio or television, which media devote their advertising time mostly to attempting to influence the mass consumer market which they reach, rather than the kind of professional industrial buyers who are interested in building wire. As to telephone orders, we do not think an electrician phoning the knowledgeable order clerk in an electrical supply house would be likely to get the wrong product, if that is what the solicitor had in mind.

 Taking all of the foregoing matters into account, we are constrained to disagree with the decision of the Patent Office to reject the application to register, ex parte, on the prior registration. That decision is, therefore, *reversed*.

Reversed.

MARTIN, Judge, did not sit or participate in decision because of illness.

KIRKPATRICK, Judge, dissents.