**The PROCTER & GAMBLE COMPANY,**
Appellant,

v.

**A. E. STALEY MANUFACTURING CO.,**
Appellee.

Patent Appeal No. 7314.

United States Court of Customs and Patent Appeals.

March 18, 1965.

---

Worley, C. J., dissented.

John W. Melville, Cincinnati, Ohio, Bernard Edward Shlesinger, Jr., Washington, D. C., for appellant.

C. C. Jensch, Decatur, Ill., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

SMITH, Judge.

This is an appeal by The Procter & Gamble Company, as appellant-opposer, from a 2–1 decision by the Trademark Trial and Appeal Board (138 USPQ 534) dismissing appellant's opposition to an application [1] for registration of the mark "OXYTROL" by appellee, A. E. Staley Manufacturing Company, as a trademark for industrial starches. The opposition is based on appellant's well known trademark "OXYDOL" for soap,[2] and for sudsing cleaner, cleanser and detergent.[3]

The question before this court is whether the Trademark Trial and Appeal Board erred in dismissing the opposition. This, in turn, depends upon whether the board was correct in finding that the trademark "OXYTROL", when applied to industrial starches, is not likely to cause confusion, or to cause mistake, or to deceive within the meaning of 15 U.S.C. § 1052(d).

The problem with which we are here confronted is a difficult one for this court, for unlike courts of more general jurisdiction, we are not at liberty to consider what appellant has termed "the equities," except as they are pertinent to the statutory issues under which applicant's right to register must be judged. Thus general principles of trademark law drawn from the context of opinions rendered in trademark infringement and unfair competition causes generally are of relatively little assistance. We do, however, find understanding in the decision of the Court of Appeals for the

1. Serial No. 98,161, filed May 31, 1960.

2. Reg. No. 100,664, issued Oct. 20, 1914 to a predecessor, twice renewed; and Reg. No. 409,358, issued Oct. 3, 1944.

3. Reg. No. 565,552, issued Oct. 21, 1952.

Second Circuit in Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492 (2d Cir. 1961), where, in affirming a lower court decision dismissing a complaint charging trademark infringement and unfair competition, the court set forth tests which we find helpful in resolving the issue here. The court there stated (at 495):

"The problem of determining how far a valid trademark shall be protected with respect to goods other than those to which its owner has applied it, has long been vexing and does not become easier of solution with the years. * * * Where the products are different, the prior owner's chance of success is a function of many variables: the strength of his mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers. * * * "

The majority opinion of the board in the present case contains specific statements of fact for which we find ample support in the record. In summary form, those statements are:

1) Opposer has clearly established prior use of its mark, "OXYDOL", a well-known mark.

2) The mark "OXYDOL" is well-known to people in the textile trade; however, the goods opposer sells to the textile industry are not sold under the trademark "OXYDOL."

3) The mark "OXYDOL" is an arbitrary, technical mark which has been in long use and has been extensively advertised, and opposer has enjoyed substantial sales thereunder.

4) The starch sold by applicant under the mark "OXYTROL" is sold only as warp sizing.

5) Neither opposer nor its subsidiary sells a warp sizing.

6) There is a specific difference in the goods of applicant and opposer: "OXYDOL" detergent being a mass market product, the principal purchasers being housewives, whereas "OXYTROL" starch is a specialty product sold for industrial use only.

7) Each of the parties operates in the field of the other but not under the marks in issue.

8) The fact that applicant's product is a highly technical product clearly distinguishes it from the household detergent to which opposer applies its mark.

9) Applicant's product is purchased and used only by discriminating technical purchasers.

10) There are differences that exist between the marks.

11) Applicant's mark would have a suggestive meaning to purchasers of the specific goods, i. e., hydroxyethylated industrial starch, in connection with which it is used.

Resolution of the issue here, i. e., the right of applicant to registration of its mark "OXYTROL" in view of the foregoing facts, requires us first to consider the similarities of the marks in issue and then to balance a combination of those factors listed above which bear on the issues within our limited jurisdiction. In other words, we are not a tribunal in which the issues of unfair competition can be litigated except as comparable issues are relevant to the right to register a trademark.

In In re General Electric Co., 304 F.2d 688, 690, 49 CCPA 1186, 1188, we stated the principle as follows:

"Section 2(d) does not require only that when goods are identical we consider merely how much two marks resemble each other in the abstract. It requires that we consider whether, *when the marks are applied to the goods* of the prior

registrant and the applicant, respectively, the marks *so* resemble each other that such use would be likely to cause confusion, mistake or deception of purchasers. In view of the overlap in the present case in the description of goods, the marks not being identical, we believe that our concern here is only with the goods in that area of overlap, which goods are building wires. Our problem then becomes one of deciding whether those who buy those goods would be likely to be confused, mistaken or deceived by concurrent use of VULKENE and VULCAN on them as trademarks. Abstract similarity of the marks, or the converse, does not supply us with the answer, as it has not supplied it in many cases in which we have held, notwithstanding obvious similarity, that there would not be likelihood of confusion. * * * "

■■ Applying these general principles to the issues in the present appeal we have reviewed the decision of the Trademark Trial and Appeal Board and agree with it that the cumulative differences of the marks, and the differences in the goods to which they are applied and in the classes of purchasers to which the goods of the respective parties are sold are sufficient to support the board's finding of no likelihood of confusion. There is a difference, slight though it may be, between the marks in issue as to sound and meaning. There is without question a similarity in the appearance of the words which comprise the respective marks. There is a substantial difference in the goods to which the marks are applied. While difference in goods alone is not controlling, Hollywood Water Heater Co. v. Hollymatic Corp., 274 F.2d 679, 47 CCPA 782, where the difference is such that the goods will move in different channels of trade to different classes of purchasers it becomes a further cumulative factor.

While there may well be many purchasers of applicant's "OXYTROL" starch who also are familiar with opposer's "OXYDOL" product, the substantial differences in the technical markets in which the respective goods are sold are such that the trademarks as applied to such goods would not be likely to be relied upon by the purchasers to indicate that the goods in issue emanate from the same source. Thus, the slight differences in the marks combined with the very substantial differences in the technical nature of the goods to which the marks are applied and the markets in which these goods are sold makes it unlikely that a purchaser would consider that opposer was the source of the "OXYTROL" industrial starches of applicant and hence make it unlikely that registration of applicant's mark as applied to its goods would cause confusion, mistake or deception within the meaning of 15 U.S.C. § 1052(d).

It is to be noted in the foregoing analysis that we find an important difference in the technical nature of the goods involved. Appellee throughout its brief has emphasized this difference and refers to its "OXYTROL" starch as hydroxyethylated starch. As pointed out in appellee's brief:

" * * * Applicant's organization have a specific way of pronouncing the mark 'OXYTROL.' There is evidence that purchasers pronounce the mark 'OXYTROL' with the last syllable rhyming with the word 'control' (R. 245). Applicant's employees pronounce it in this fashion. This is a logical result of the way in which the word was coined. The word is meant to suggest the control of oxygen, which in turn reminds the prospective purchaser that the product is not as damaging to marine life as other types of warp sizing agents might be. There is virtually no dispute about the fact that the product on which the mark appears has this quality, that such a quality is specifically advertised (See Exhibits at R. 23, 25.), that purchasers consider the control of oxygen and resulting lesser damage to fish important, and, what is more, that the

man who dreamed up the name intended that the name do all of these things. Therefore, when we say that the trademark 'OXYTROL' is pronounced differently from the mark 'OXYDOL,' it is for a very logical reason and well supported by the evidence in this case."

Despite the importance which appellee attaches to its use of "OXYTROL" on a specific starch in seeking to prevail in this proceeding, we note, as did the majority of the Trademark Trial and Appeal Board, that the application for registration is broadly stated to be for "Industrial Starches." As stated by the board in a footnote to its opinion:

"It is apparent that the recitation of goods in the application comprehends more than starches used for warp sizing and on the basis of the

record here must be construed as being an indefinite description of applicant's goods. Since the starch sold by applicant under the mark "OXYTROL" is sold only as warp sizing, it is suggested that should applicant ultimately prevail herein, appropriate amendment to the identification of goods be required by the Examiner of Trademarks."

We agree, and on this basis affirm the appealed decision.

Affirmed.

WORLEY, Chief Judge (dissenting).

On this record [1] I am of the opinion there would be a likelihood of confusion. At least, I feel obliged to resolve doubt on that score in favor of the first registrant and against the newcomer.

1. "The court shall hear and determine such appeal on the evidence produced before the Patent Office * * *." Lanham Act, Section 21 (15 U.S.C. § 1071).