55 CCPA

**VORNADO, INC., Appellant,**

v.

**BREUER ELECTRIC MFG. CO., Appellee.**

**Patent Appeal No. 7878.**

United States Court of Customs and Patent Appeals.

Jan. 25, 1968.

Bernard Liles, New York City, for appellant.

Lee J. Gary, James M. Parker, Gary, Parker, Juettner & Cullinan, Chicago, Ill., for appellee.

Before WORLEY, Chief Judge, RICH, SMITH and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

ALMOND, Judge.

Vornado, Inc. appeals from the decision of the Trademark Trial and Appeal Board sustaining the opposition of Breuer Electric Mfg. Co. to appellant's application for registration of "VORNADO" as a trademark for a wide variety of electrical appliances. These appliances, among others, include electric devices such as toasters, frying pans, cooking ranges and ovens, light bulbs, vacuum cleaners, floor polishing machines, hair dryers, room heaters, fans, portable room coolers and vaporizers.

Appellee in its notice of opposition alleges that appellant's VORNADO so resembles TORNADO, previously used and registered by it for electrically-driven portable electric blowers, suction cleaners, and sprayers; [1] electric dust collectors for wood working machines; [2] a device for separating dust from air consisting of a unit having a blower, a dust arrestor or filter means and a means whereby pure air can be exhausted from the unit; [3] and electric machines for floor cleaning, polishing, sanding, scrubbing or waxing, [4] as to be likely, when applied to appellant's goods, and, in particular, electric vacuum cleaners, electric floor polishing machines, electric hair dryers, electric room heaters, electric fans, electric portable room coolers and electric vaporizers, to cause confusion among purchasers with the mark TORNADO as to the source of such goods.

Only appellant took testimony, appellee relying on its registrations issued prior to the date of first use alleged or shown by appellant.

Appellant operates twenty or more stores in five states dispensing all types of merchandise and food products, including VORNADO electrical equipment and appliances manufactured specifically for it. The bulk of sales of VORNADO

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Reg. No. 246,727 issued September 11, 1928, renewed.

2. Reg. No. 426,446 issued December 24, 1946.

3. Reg. No. 441,417 issued November 23, 1948.

4. Reg. No. 528,313 issued August 1, 1950.

appliances are made in appellant's own retail outlets. Sales of such appliances are also made through its wholesale distributing center to other retail merchants throughout the country. Appellant is the owner of subsisting registrations of VORNADO for prefabricated ducts for air conditioning systems and outlet diffusers and grilles for use therewith; for thermostats; for air conditioning units and for electrical fans for domestic and commercial use. In addition to the goods identified in these registrations, appellant also sells various electrical appliances such as those identified in its current application for registration. VORNADO appliances have been advertised on a national scale through news media, catalogues and other promotional material with expenditure during fiscal 1963 of more than fifty-five thousand dollars. Sales of VORNADO products from August 1961 to August 1964 approximated eight million dollars.

While not here in issue, it is noted that the board held that by reason of laches and acquiescence appellee was estopped from asserting that it will be damaged by the registration of VORNADO for electric fans, imputing constructive notice of appellant's claim of ownership of VORNADO for such fans since its registration thereof, namely May 3, 1949. Thus, there is left for determination whether or not appellant's use of VORNADO for electrical appliances and equipment other than electric fans is likely to cause confusion in trade with appellee's use of TORNADO for the goods set forth in its registrations.

The record supports the findings of the board that appellee's registrations include electrically-driven portable electric blowers, sunction cleaners, sprayers, and electric machines for floor cleaning, polishing, sanding, scrubbing or waxing, and that appellant's identification includes electric vacuum cleaners, electric floor polishing machines and other electrical appliances and equipment so closely related to the goods of appellee that they "would generally be assumed by purchasers to emanate from the same source."

Appellant contended before the board, and argues here, that appellee manufactures and sells goods strictly of an industrial type which are distributed to industrial plants, commercial institutions and like facilities for maintenance purposes and that such goods are incapable or unsuitable for household or domestic use whereas appellant's goods are of the nature of household goods and are distributed through retail outlets to the general purchasing public.

The board, taking cognizance of appellant's evidence introduced in support of this contention, reasoned that, while such evidence may create the impression that appellee is primarily concerned with the production and distribution of goods for industrial use, the controlling factor is the description of the goods in appellee's registrations. The board noted, as do we, that there is no limitation or restriction in these registrations confining the goods described therein to commercial or industrial use. The presumption would follow, therefore, that appellee's goods are suitable for both household and industrial use and consequently could move in the same channels of trade as those of appellant.

In General Shoe Corp. v. Lerner Bros. Mfg. Co., Inc., 254 F.2d 154, 45 CCPA 872, the court stated:

Even though the net effect of the evidence of record may be to create the impression that opposer is now primarily concerned commercially with women's shoes under the "Holiday" mark, we do not feel that this can be controlling of the issue so long as the opposer's earlier registration of "Holiday" is not so limited. * * *

To the same effect, see United States Steel Corp. v. Bijur Lubricating Corp., 286 F.2d 617, 48 CCPA 820; Russell Chemical Co. v. Wyandotte Chemical Corp., 337 F.2d 660, 52 CCPA 807.

It is further to be noted that appellant's application reciting a broad series of electrical goods does not restrict

such goods to household use. The board, properly we think, approached the issue of likelihood of confusion on basis of use for both household and commercial purposes. J. C. Hall Co. v. Hallmark Cards, Inc., 340 F.2d 960, 52 CCPA 981. Under such circumstances it is reasonable to presume that it is likely that the goods of the parties would be encompassed by the same channels of trade, under similar circumstances and conditions so as to create the impression in the minds of purchasers that they emanated from the same source.

██ Appellant contended below, as it does here, that a pertinent factor dissuasive of likelihood of confusion is that in appellee's advertising of its mark TORNADO the mark always appears with a representation of the whirling funnel of a tornado and that since approximately 1950 appellant's VORNADO has always been used in a distinctive and particular style. In response thereto the board held, and we agree, that the display of a mark in a particular style is of no material significance since the display may be changed at any time as may be dictated by the fancy of the applicant or the owner of the mark. In this connection it is to be further noted that appellee relies here solely on its registrations which disclose only the term TORNADO. We agree with the board that the issue here does not properly admit consideration of a design used by appellee in advertising in derogation of rights attaching by reason of appellee's registrations.

██ Mindful of the fact that appellee is the prior user; that the goods of the parties in the light of the record before us are of the same general class; and that they are substantially similar and could be dispensed through the same channels of trade to purchasers of electrical supplies, we turn to consideration of the competing marks VORNADO and TORNADO. The only significant difference which we perceive is that TORNADO is a dictionary word with a well-known meaning, while VORNADO is a coined and arbitrary term. With the exception of the first letter in each mark, they are identical and there is striking similarity in sound and appearance. We must, under the circumstances of this case, agree with the board that the similarities outweigh the differences and that there is a reasonable likelihood, when VORNADO is applied to the goods of appellant, to cause confusion, or to cause mistake, or to deceive within the purview of section 2(d) of the Lanham Act (15 U.S.C. § 1052).

The decision of the board is therefore affirmed.

Affirmed.

RICH, Judge (dissenting).

I would reverse. See In re General Electric Co., 304 F.2d 688, 49 CCPA 1186 (1962), and Lever Brothers Co. v. Producers Chemical Service, 283 F.2d 879, 48 CCPA 744 (1960). Everyone is familiar with the common word "tornado." "VORNADO" is obviously not that word, not the same trademark, and no one is likely to think wares bearing these different marks emanate from the same source. If the source were the same, one would expect the marks to be the same, not different, since that is the way marks are used. These are not two *arbitrary* marks.

"VORNADO" is what I would call an irritating trademark. It is just enough different from a common word to impress that fact on the mind of the beholder.[1] He is not going to remember it as "tornado," because he knows that

---

1. Lest I be misunderstood as somehow reflecting adversely on the VORNADO mark by calling it a mark of the "irritating" type, I will amplify my meaning by saying that my first impulse was to call it an "itchy" mark, that word denoting a "mild stimulation of pain receptors." This *may* be a personal reaction to the mark which I have to many marks which are just enough different from common words to make one brood about them and their possible origins. The one thing I am certain about with respect to such marks is that they are *not* the words they resemble. That is why I hold the opinion I do in this case that confusion is

word and remembers the difference, which is the first thing to impress itself on his mind.

In my opinion, the marks here do not *so* resemble each other as to be likely to cause confusion or mistake or to deceive. 15 U.S.C. § 1052(d).

SMITH, Judge (dissenting).

The marks "VORNADO" and "TOR-NADO" have such differences in meaning and probably psychological impact upon the consumer that I think confusion would not be likely.

From the testimony here, a purchaser confronted with the marks in issue would associate the mark "TORNADO" with what he knows as a "tornado," which one witness described as "a large swirling, violent body of air of a stormy nature." No similar meaning or association was shown to attach to the fanciful word "VORNADO."

Thus, the respective marks produce distinct and nonconfusing psychological impacts in the mind of a consumer and present an excellent example of an instance where the test of the similarity of overall word structure is not controlling. In my view, the single letter difference of appellant's apparently coined and arbitrary mark "VORNADO" is sufficient to cause a consumer to attach to the word a meaning very distinct from that which he attaches to the mark "TORNADO." The fact that the difference occurs in the initial letter of the marks also is significant in that it is this difference which initially stimulates the perception into seeking the meaning for the words as wholes. Here the record establishes the meaning of the word "tornado" as being distinct from any meaning likely to be assigned to the mark "VORNADO." The psychological imagery evoked by the respective marks being compellingly different, I would reverse the decision of the board.

unlikely. I act herein on that opinion, however, because I believe it is a common and not merely a personal reaction. As has often been said, trademarks are psychological. There are no tests of

record on the psychological impact of VORNADO so we have to use our judgment on that point on the assumption the populace is entirely familiar with the very common word "tornado."