1 F.3d 1252
 28 U.S.P.Q.2d 1687
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
BURNS PHILP FOOD, INC., by merger and change of name from
Specialty Brands, Inc., Appellant,
v.
MODERN PRODUCTS, INC., Appellee.
 No. 93-1038.
 United States Court of Appeals, Federal Circuit.
 June 14, 1993.
Rehearing Denied Aug. 10, 1993.
 
 Before ARCHER, MICHEL, and RADER, Circuit Judges.
 MICHEL, Circuit Judge.
 
 
 1
 Burns Philp Food, Inc. (Burns Philp) appeals from the August 10, 1992 decision of the Trademark Trial and Appeal Board (TTAB or Board) dismissing Opposition No. 77,433, to the registration of the trademark SPICE GARDEN with design, having stylized letters in an arc which are lined for green, for spices, Application Serial No. 73/663,828 of appellee, Modern Products, Inc. Because the Board's findings of fact, especially concerning dissimilar commercial impression, sight, sound, connotation and meaning, were not clearly erroneous and because the Board has not been shown to have legally erred in its considering evidence of trade dress or in its conclusion that there was no likelihood of confusion, we affirm.
 
 DISCUSSION
 
 2
 On appeal, Burns Philp argues that the TTAB's finding that the SPICE GARDEN and SPICE ISLANDS marks projected significantly different commercial impressions was clearly erroneous. According to Burns Philp, there is no evidence to support the Board's finding that SPICE ISLANDS presents a "seafaring, South Seas image ... not suggested by applicant's mark, nor by any of the trade dress which applicant uses." Slip op. at 6.
 
 
 3
 We review the Board's findings under the clearly erroneous standard. Stock Pot Restaurant, Inc. v. Stockpot, Inc., 737 F.2d 1576, 1578-79, 222 USPQ 665, 666-67 (Fed.Cir.1984). Under this standard, the Board's findings will be upheld unless, in light of the evidence, they are clearly or manifestly wrong. Id., 222 USPQ at 666-67. On this record, the Board's finding as to commercial impression is not clearly erroneous.
 
 
 4
 The TTAB's finding that the commercial impression of the SPICE ISLANDS mark presents a "seafaring, South Seas image" is supported by ample evidence in the record, including the testimony of Burns Philp's President, Mr. Yuan, The Spice Islands Cookbook, and specimen labels. Mr. Yuan specifically testified that the mark's image was exotic and wordly, "[t]hat of going to distant corners of the earth to find the best spices and herbs and seasoning; you can call it a nautical motive [sic] or image that we try to convey." Slip op. at 5. The text in The Spice Islands Cookbook also promotes the nautical, South Seas image of the mark by describing the history of the Spice Islands in connection with use of the mark. This nautical, South Seas theme is also reinforced by the mental impression found by the Board to be conveyed by the words SPICE ISLANDS. Additionally, the record contains numerous advertisements depicting the SPICE ISLANDS mark in a nautical setting including images of sea captains and references to exotic islands and other remote locations. The labels convey much the same image. Thus, because the Board's finding as to SPICE ISLAND's commercial impression is adequately supported by the evidence of record, it is not clearly erroneous.
 
 
 5
 In analyzing the commercial impression of applicant's SPICE GARDEN mark, the Board relied on the mental image evoked by the words as well as the appearance of the mark as applied for. The mark as applied for appears as the words SPICE GARDEN in stylized letters in a "semi-circle ... lined for the color green, which is claimed as a feature of [the] mark." Slip op. at 4. The Board found that these factors created a commercial impression of an entry way into a garden. Slip op. at 6-7. The Board also relied on trade dress evidence of the "leafy vines" used on applicant's SPICE GARDEN label to further support its finding as to commercial impression.[1] The Board found that the trade dress of opposer's SPICE ISLANDS mark, by contrast, used an ornamental filigree design which did not convey the image of a garden entrance.[2] Additionally, the SPICE ISLANDS mark appears in labels in a different typeface style which presents a more ornate appearance than that used by SPICE GARDEN. Moreover, the record contains no evidence that the SPICE ISLANDS mark has ever appeared in the shape of an arc, in contrast to applicant's SPICE GARDEN mark for which the arc shape is a claimed design feature. In this case, the differences in the marks' trade dress along with the design features of the mark itself in the application and the different connotations and mental impressions found by the Board to be conveyed by the respective word pairs themselves support the Board's finding that the two marks do not convey confusingly similar commercial impressions. Therefore, because the Board's finding of dissimilar commercial impressions is well supported by the evidence and not clearly erroneous, we decline to substitute our own fact finding for that of the Board. Stock Pot, 737 F.2d at 1579, 222 USPQ at 667. We also note that the specialized trademark attorneys who constitute the Board members possess far greater experience and expertise than the generalist judges of this court in deciding the factual questions of commercial impression, which provides an additional reason to defer to their well supported findings.
 
 
 6
 Burns Philp's attempt to discredit the evidence supporting the Board's findings as to the commercial impression of the marks is unpersuasive. Burns Philp argues that consumers in the marketplace would not be familiar with either Mr. Yuan's testimony or The Spice Islands Cookbook, and therefore that this evidence could not be relied on by the Board. Although not direct proof of consumer awareness, certainly this evidence is probative of the commercial impression that Burns Philp and its predecessor, Specialty Brands, Inc., attempted to convey to consumers. On this record, it was not clear error for the Board to conclude that this was the commercial impression actually conveyed to spice consumers in the grocery store and health food store marketplace. Moreover, the Board did consider more direct evidence of the marks' respective commercial impressions in the marketplace, such as the different meaning and connotation conveyed by the words themselves and the different trade dress used in connection with the marks. The actual labels and advertisements are in the record and support the finding that the commercial impressions actually conveyed by the two marks were dissimilar.
 
 
 7
 Additionally, Burns Philp argues that the Board improperly admitted and relied on evidence concerning the trade dress of the two marks in considering their commercial impression. Burns Philp cites Specialty Brands, Inc. v. Coffee Bean Distributors, Inc., 748 F.2d 669, 674, 223 USPQ 1281, 1284 (Fed.Cir.1984), for the proposition that "[o]rdinarily, for a word mark we do not look to the trade dress, which can be changed at any time." (citing Vornado, Inc. v. Breuer Electric Mfg. Co., 390 F.2d 724, 156 USPQ 340, 342 (1968)) (same mark). Burns Philp ignores the second half of the cited passage, however, which states that trade dress may be considered as "evidence of whether [a] word mark projects a confusingly similar commercial impression." Id. In fact, "trade dress can be used as evidence of whether a word mark projects a confusingly similar or different meaning or impression." J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition Sec. 20.04, at 20-28 (3d ed. 1992) (emphasis added). In this case, the trade dress evidence in no way supports, but rather strongly tends to negate, a finding that the mark presents a confusingly similar commercial impression. See Specialty Brands, 748 F.2d at 674, 223 USPQ at 1284. Furthermore, applicant's SPICE GARDEN mark is not a pure word mark because of the claimed design features contained in the application. Therefore, it is particularly appropriate in this case to consider applicant's trade dress along with other factors such as design appearance and word meaning in determining the mark's commercial impression. Indeed, not only claimed features of the mark but also trade dress, lack of actual confusion over a period of more than four years and all the other types and forms of evidence the Board relied on were properly admitted and probative.
 
 
 8
 Burns Philp also argues that the Board erred in reaching its conclusion that there was no likelihood of confusion, because it gave insufficient weight to the fame of opposer's SPICE ISLANDS mark. Burns Philp relies on Kenner Parker Toys v. Rose Art Industries, Inc., 963 F.2d 350, 352, 22 USPQ2d 1453, 1456 (Fed.Cir.1992), to support its argument that the admitted and properly found fame of its prior mark must play "a dominant" role in determining likelihood of confusion in the present case. But Kenner does not hold that fame must always be dispositive, i.e., the dominant factor. On the contrary, Kenner holds that "[t]he test for likelihood of confusion requires the Board and this court to consider evidence on a wide variety of factors." Kenner, 963 F.2d at 352, 22 USPQ2d at 1455 (citing In re E.I. duPont de Nemours & Co., 476 F.2d 1357, 1361, 177 USPQ 563, 567 (CCPA 1973)).
 
 
 9
 The Board's ultimate conclusion of likelihood of confusion is a question of law which we review de novo. Id., 22 USPQ2d at 1455; Specialty Brands, 748 F.2d at 671, 223 USPQ at 1282. "As dictated by the evidence, different factors may play dominant roles in determining likelihood of confusion." Kenner, 963 F.2d at 352, 22 USPQ2d at 1456 (citing Nina Ricci, S.A.R.L. v. E.T.F. Enters., 889 F.2d 1070, 1073, 12 USPQ2d 1901, 1903 (Fed.Cir.1989)). Accordingly, neither Kenner specifically nor the pertinent precedent generally supports Burns Philp's argument that fame must be decisive.
 
 
 10
 The Board did not err in its relative weighing of fame and the other factors relevant to a determination of likelihood of confusion in this case. In fact, the present case is distinguishable from Kenner because in that case the Board discounted the fame of opposer's mark, treating it as a liability. 963 F.2d at 353, 22 USPQ2d at 1456. Here, the Board acknowledged the fame of the SPICE ISLANDS mark, noting that it was "very well known" for spices. However, the Board also stated that "while we recognize that the fame of a mark is entitled to substantial weight i[n] our deliberation, the differences in connotation and in trade dress on the labels are significant countervailing factors." Slip op. at 7 (citation omitted). That the fame of an opposer's mark can sometimes be dispositive as in Kenner, 963 F.2d at 356, 22 USPQ2d at 1458, does not mean that other factors are not significant or may not outweigh fame. Because the commercial impressions of the marks were found to be so different and because applicant's mark with design as sought to be registered is so limited in shape, color and appearance, greatly reducing any likelihood of confusion in the marketplace, the finding of dissimilar commercial impressions is entitled to great weight. Indeed, on the particular facts of this case, we are not persuaded that the Board erred in its finding that the difference in commercial impression of the marks, along with the factors of dissimilar sight, sound, connotation and meaning, is significant enough to outweigh the fame of opposer's mark. Therefore, we are not persuaded that the Board erred in concluding that there was no likelihood of confusion between opposer's SPICE ISLANDS mark as used and applicant's SPICE GARDEN mark as restricted in the application.
 
 
 11
 Finally, Burns Philp argues that the Board erred in determining there was no likelihood of confusion because it failed to follow its own precedent involving the SPICE ISLANDS mark. Burns Philp cites several cases where registration of marks containing the term "SPICE" followed by a term designating a place were successfully opposed by SPICE ISLANDS or where such marks were found to infringe SPICE ISLANDS' marks. See, e.g., Specialty Brands, Inc. v. Coffee Bean Distribs., 748 F.2d 669, 223 USPQ 1281 (reversing dismissal of opposition to registration of SPICE VALLEY mark because it was confusingly similar to SPICE ISLANDS); Specialty Brands, Inc. v. Spiceseas, Inc., 220 USPQ 73 (TTAB 1983) (sustaining opposition to registration of SPICESEAS mark); Spice Islands, Inc. v. Frank Tea & Spice Co., 505 F.2d 1293, 184 USPQ 35 (CCPA 1974) (reversing dismissal of opposition to SPICE TREES mark because it was confusingly similar to SPICE ISLANDS); Spice Islands Co. v. Gold Seal Co., 136 USPQ 311 (TTAB 1962) (sustaining opposition to registration of ISLAND SPICE MIST); Spice Islands Co. v. Spice Land Prods., Inc., 262 F.2d 356, 120 USPQ 64 (2nd Cir.1959) (holding SPICE ISLANDS mark infringed by SPICE LAND mark and enjoining further use of the latter).
 
 
 12
 Although these precedents bind the Board to the extent that their facts are analogous to those in the present case, each case must be decided on its own facts. Polaroid Corp. v. Richard Mfg. Co., 341 F.2d 150, 152, 144 USPQ 419, 421 (CCPA 1965) ("[P]rior decisions in trademark cases, where the issue is a likelihood of confusion, furnish meager assistance in the resolution of that issue. Each case must be decided on the basis of the factual situation thereby presented."). In this instance, all the cases cited by Burns Philp are factually distinguishable.
 
 
 13
 The closest case is Specialty Brands, Inc. v. Coffee Bean Distribs., Inc., 748 F.2d 669, 223 USPQ 1281, involving the SPICE VALLEY opposition. In the SPICE VALLEY case, this court noted that "[i]t is the similarity of commercial impression between SPICE VALLEY and SPICE ISLANDS that weighs heavily against the applicant as applied to identical goods." Id. at 673, 223 USPQ at 1283. The evidence that SPICE VALLEY used a similar trade dress to that of SPICE ISLANDS supported the Board's finding in that case that the marks presented a confusing similar commercial impression. Id. at 674, 223 USPQ at 1284. In the present case, however, there is no such evidence of confusingly similar trade dress, and in fact the Board found that the marks had significantly dissimilar commercial impressions. Second, in the SPICE VALLEY case the trade dress evidence was found to support a finding of likelihood of confusion while here it was found sufficiently different to prevent a likelihood of confusion.
 
 
 14
 Similarly, in the SPICE TREES opposition, the evidence showed confusingly similar symbolic representations of a tree used in both opposer's and applicant's trade dress. Once again, no such evidence exists in the record of the present case. The other cases cited by Burns Philp are inapposite, because they involve only pure word marks rather than marks having a design and therefore trade dress and claimed design features as components of commercial impression are not a present or significant factor in those cases. Therefore, the Board did not err in failing to follow the results in these cases in determining whether there was a likelihood of confusion in the present case. In the present case, the Board found that the two marks were significantly different in sight, sound, appearance, meaning, connotation and commercial impression. Despite giving great weight to the fame of opposer's mark, the Board concluded that there was no likelihood of confusion. We are not persuaded to reverse this conclusion, which is so dependent on the fact findings and counter-weighing of various duPont factors that we have sustained.
 
 
 15
 ARCHER, Circuit Judge, dissenting.
 
 
 16
 In my view the Trademark Trial and Appeal Board (board) erred as a matter of law in determining that there is no likelihood of confusion between applicant Modern Products' mark SPICE GARDEN and opposer Burns Philp's registered mark SPICE ISLANDS. The board legally erred by relying on applicant's trade dress to find that the commercial impression of SPICE GARDEN differed from that of SPICE ISLANDS. As a result, it attributed too much weight to the difference of the marks in their entireties (sight, sound, connotation and commercial impression) and too little to other du Pont factors, including the fame of Burns Philp's mark. See In re E.I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973).
 
 
 17
 A. The board found that Burns Philp's SPICE ISLANDS mark conveyed a "seafaring, South Seas image" as its connotation and commercial impression. While I believe the evidentiary support for this finding is weak, I accept it for purposes of this dissent.[1] In comparing the commercial impressions of the marks, the board relied primarily on the trade dress of applicant's SPICE GARDEN mark as evidence that its commercial impression differed from opposer's SPICE ISLANDS mark.[2] The board cited Kenner Parker Toys, Inc. v. Rose Art Industries, Inc., 963 F.2d 350, 22 USPQ2d 1453, (Fed.Cir.1992), as support for using trade dress as evidence of different commercial impressions.
 
 
 18
 The decision in Kenner, however, does not support the use of trade dress to decide that the commercial impressions of marks are different. The court in Kenner looked to trade dress only after it carefully analyzed the similar impressions conveyed by applicant's FUNDOUGH mark and opposer's registered PLAY-DOH marks. Before looking to applicant's trade dress, the court in Kenner restated the precedent of this court:
 
 
 19
 Ordinarily, for a word mark we do not look to the trade dress, which can be changed at any time. Vornado, Inc. v. Breuer Elec. Mfg., 390 F.2d 724, [727,] 156 U.S.P.Q. 340, 342 (CCPA 1968). But the trade dress may nevertheless provide evidence of whether the word mark projects a confusingly similar commercial impression.
 
 
 20
 Kenner 963 F.2d at 355, 22 USPQ2d at 1458 (quoting Specialty Brands, Inc. v. Coffee Bean Distribs., Inc., 748 F.2d 669, 674, 223 USPQ 1281, 1284 (Fed.Cir.1984)). In Kenner, therefore, the court recognized that trade dress is usually not pertinent for determining the impression or connotation of a word mark because trade dress can be changed; however, as Specialty Brands holds, trade dress may be evidence of whether a mark can convey a similar commercial impression.[3]
 
 
 21
 To illustrate the fallacy in looking at trade dress to determine that the commercial impressions of marks are different, Modern Products' could change its trade dress to portray a ship and an island with its SPICE GARDEN mark. This new trade dress would convey a commercial impression similar to "seafaring, South Seas image" that the board found for Burns Philp's SPICE ISLANDS mark. Because trade dress may be changed at any time, the board erred in relying on it to determine that applicant's mark and opposer's mark conveyed different commercial impressions.
 
 
 22
 B. We review de novo the board's ultimate conclusion of likelihood of confusion. In determining likelihood of confusion, the factors set forth in In re E.I. du Pont de Nemours & Co., 476 F.2d 1357, 1361, 177 USPQ 563, 567 (CCPA 1973), must be considered. As dictated by the evidence, different du Pont factors may play dominant roles in determining the likelihood of confusion. Kenner, 963 F.2d at 352, 22 USPQ2d at 1456 (Fed.Cir.1992); Nina Ricci, S.A.R.L. v. E.T.F. Enters., Inc., 889 F.2d 1070, 1073, 12 USPQ2d 1901, 1903 (Fed.Cir.1989). Because the board erred by according great weight to applicant's trade dress, I am convinced that the other du Pont factors, including the fame of the SPICE ISLANDS mark, compel a conclusion that applicant's mark would likely cause confusion with opposer's mark.
 
 
 23
 The long-standing precedent of this court, and its predecessor, is that the fame of a prior mark may play a dominant role in weighing the factors for likelihood of confusion and can never be of little consequence.[4] Kenner, 963 F.2d at 352-353, 22 USPQ2d at 1456-57; see Nina Ricci, 889 F.2d at 1073, 12 USPQ2d at 1903; Specialty Brands, 748 F.2d at 675, 223 USPQ at 1284; Sure-Fit Prods. Co. v. Saltzson Drapery Co., 254 F.2d 158, 159-60, 117 USPQ 295, 297 (CCPA 1958). "Famous or strong marks enjoy a wide latitude of legal protection." Kenner, 963 F.2d at 352, 22 USPQ2d at 1456; see Sure-Fit, 254 F.2d at 160, 117 USPQ at 296. Moreover, where the established mark is one which is famous, all doubt as to whether confusion is likely should be resolved against the newcomer. Nina Ricci, 889 F.2d at 1073, 12 USPQ2d at 1903 (citing Planters Nut & Chocolate Co. v. Crown Nut Co., 305 F.2d 916, 924-25, 134 USPQ 504, 512 (CCPA 1962)).
 
 
 24
 Based on this precedent, the court in Kenner explained:
 
 
 25
 Achieving fame for a mark in a marketplace where countless symbols clamor for public attention often requires a very distinct mark, enormous advertising investments, and a product of lasting value.
 
 
 26
 ....
 
 
 27
 A competitor can quickly calculate the economic advantages of selling a similar product in an established market without advertising costs. These incentives encourage competitors to snuggle as close as possible to a famous mark. This court's predecessor recognized that a mark's fame creates an incentive for competitors "to tread closely on the heels of [a] very successful trademark." Recognizing the threat to famous marks from free riders, this court's predecessor allowed "competitors [to] come closer" to a weak mark. A strong mark, on the other hand, casts a long shadow which competitors must avoid.
 
 
 28
 Kenner, 963 F.2d at 353, 22 USPQ2d at 1456 (citations omitted; alterations in original).
 
 
 29
 In this case, the board found that Burns Philp's SPICE ISLANDS mark is "very well known for spices, having been extensively sold and advertised over approximately 50 years." The board accepted the opposer's evidence that it sells over 130 products under the SPICE ISLANDS mark (herbs, spices, seasonings, and wine vinegar), that its annual sales are nearly thirty million dollars (wholesale) and that over the last three years it spent over one million dollars on television, magazine and newspaper advertisements. The board also noted that the cases cited by Burns Philp are evidence of its successful efforts to police its mark in the past. Burns Philp has successfully opposed other "SPICE [PLACE]" marks.[5] See Specialty Brands, Inc. v. Coffee Bean Distribs., Inc., 748 F.2d 669, 674, 223 USPQ 1281, 1284 (Fed.Cir.1984) (SPICE ISLANDS v. SPICE VALLEY); Spice Islands v. Frank Tea and Spice Co., 505 F.2d 1293, 184 USPQ 35 (CCPA 1974) (SPICE ISLANDS v. SPICE TREE); Specialty Brands, Inc. v. Spiceseas, Inc., 220 USPQ 73 (Trademark Trial & App.Bd. 1983) (SPICE ISLANDS v. SPICE SEAS); see also Spice Islands Co. v. Spice Land Prods., Inc., 262 F.2d 356, 120 USPQ 64 (2d Cir.1959) (holding infringement of SPICE ISLANDS mark by SPICE LAND mark in district court infringement action). Modern Products' SPICE GARDEN mark is the newcomer, having been used since 1987. Burns Philp presented evidence that Modern Products was aware of the SPICE ISLANDS mark for spices when it chose to use SPICE GARDEN for identical goods.
 
 
 30
 In addition to finding that the marks are used on identical goods, the board also found that the trade channels for the goods are similar, that Modern Products is seeking to sell in the same types of retail outlets, and that the goods are relatively inexpensive (presumably these items are purchased without much care, i.e., by unsophisticated purchasers). Thus, the applicant and opposer are direct competitors in the marketplace with respect to the same low-priced articles that would not be purchased with much thought or consideration.
 
 
 31
 The board held that confusion was unlikely on the basis that the marks in their entireties (considering their appearance, sound, connotation, and commercial impression) were different.[6] As discussed, this finding was based primarily on the board's analysis of trade dress. The board's finding that the marks differ in their entireties is weakened significantly by its legal error of relying on trade dress, which can be ever changing, to find different commercial impressions. All of the other pertinent du Pont factors, especially the fame of Burns' SPICE ISLANDS mark, suggest a likelihood of confusion. Any doubt should not be resolved against the owner of a famous mark, but against the newcomer. I would therefore reverse the decision of the board.
 
 
 
 [1]
 We believe that even without the vines, i.e., the trade dress evidence, the Board's finding of dissimilar commercial impressions is not clearly erroneous
 
 
 [2]
 On appeal, Burns Philp has attempted to introduce new evidence consisting of labels currently used in connection with the SPICE ISLANDS mark which it argues suggest a commercial impression of a garden. Because this evidence was not before the Board, we will not consider it on appeal. Even if we were to consider this new evidence, however, the fact that Burns Philp can point to some evidence which supports its position does not, by itself, make the Board's adverse finding clearly erroneous
 
 
 [1]
 Neither the testimony of Mr. Yuen, Burns Philp's product manager, nor the two-paragraph excerpt from the cookbook, gives any indication of what consumers in the marketplace view as the connotation or commercial impression of Burns Philp's trademark
 
 
 [2]
 The majority asserts that in finding a different commercial impression, the board relied on the design features of the mark, the different connotations and mental impressions, and the trade dress. While the board notes the different sight, sound and meaning of the marks, it relies almost exclusively on trade dress to conclude that the commercial impressions of the marks are different
 
 
 [3]
 The majority relies on McCarthy, McCarthy on Trademarks and Unfair Competition Sec. 20.04, at 20-28, for the proposition that trade dress can be used as evidence of whether a mark projects a different impression. Except for two board decisions, not precedent here, the only case cited by McCarthy is Specialty Brands
 
 
 [4]
 The majority characterizes Burns Philp's argument as stating that the fame of its SPICE ISLANDS mark "must be decisive." However, Burns Philp only argues that its famous mark deserves a wide scope of protection and that when fame is considered with other du Pont factors there is a likelihood of confusion
 
 
 [5]
 I do not consider the distinctions of the board or the majority persuasive in these cases once the error of finding differences of connotation and impression of marks based on the trade dress is recognized
 
 
 [6]
 The board also noted that there was some evidence of similar marks registered for similar goods and that applicant's witness testified that he knew of no instances of actual confusion. The board, however, did not indicate that it placed any weight on this evidence. Because Modern Products only introduced and began using its mark relatively recently, lack of actual confusion is not significant