SPECIALTY BRANDS, INC., Appellant,

v.

COFFEE BEAN DISTRIBUTORS, INC., Appellee.

Appeal No. 84–828.

United States Court of Appeals, Federal Circuit.

Nov. 21, 1984.

17. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (ed.1967).

Veronica C. Devitt, Limbach, Limbach & Sutton, San Francisco, Cal., argued for appellant.

John M. McCormack, Kolisch, Hartwell, Dickinson & Anderson, Portland, Or., argued for appellee; William T. Bullinger, Cushman, Darby & Cushman, Washington, D.C., of counsel.

Before DAVIS, SMITH and NEWMAN, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

This case presents a question of likelihood of confusion under § 2(d) of the Lanham Act, 15 U.S.C. § 1052(d). The Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office (Board) dismissed Opposition No. 65,515 to the registration of the word mark SPICE VALLEY

for teas, Application Serial No. 258,167 of appellee Coffee Bean Distributors, Inc. The opposition was brought by appellant Specialty Brands, Inc., based on its registered trademark SPICE ISLANDS for teas. We *reverse.*

## Background

The decision of the Board setting forth the facts of this opposition and the Board's reasoning is reported at 220 USPQ 1072 (TTAB 1983). In brief, the Board found no likelihood of confusion between the trademarks SPICE VALLEY and SPICE ISLANDS for tea. It considered Specialty Brands' forty years of use of the mark SPICE ISLANDS and its "enormous sales and large advertising expenditures" to be "of little consequence" in light of the "obvious differences" between the marks. 220 USPQ at 1074. Relying on what it called the "more standard tests for determining likelihood of confusion", the Board found that the marks were not only different in overall appearance and pronunciation but that the commercial impressions conveyed by the marks were "not in the least similar". The Board viewed the mark SPICE ISLANDS as conveying "an image of an exotic region where spices, and perhaps teas, of all varieties are found" and that applicant's mark SPICE VALLEY did not convey this remote or exotic image; it was unconvinced by Specialty Brands' argument that there was a similarity in the format of the marks (SPICE plus a place). 220 USPQ at 1075. Although acknowledging that applicant's mulling spices are sold under the SPICE VALLEY mark in packaging that "promotes a seafaring image", the Board found this evidence insufficient to prove that the applicant was attempting to trade on the reputation of the SPICE ISLANDS mark. *Id.*

## The Standard of Review

Applicant advises that this court should not substitute its own judgment for that of the "careful, unanimous judgment of the Board which has substantial support in the record", citing *Witco Chemical Co. v. Whitfield Chemical Co.,* 418 F.2d 1403, 57 CCPA 804, 164 USPQ 43 (1969), and decisions of this court such as *EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc.,* 706 F.2d 1213, 217 USPQ 986 (Fed.Cir.1983), in support of this position. These courts recognized that the Board's responsibility includes finding and weighing the facts, but these courts did not abdicate their appellate responsibilities. As the court said in *Witco Chemical,* § 2(d) of the Lanham Act "requires, of course, that we consider not only the marks but the goods and the whole situation .... [W]e then have to form a judgment as to whether there is a practical likelihood of such confusion". *Id.* at 44.

■ Applicant points out that opposer Specialty Brands has not challenged any of the factual findings of the Board. These findings, as we recently reaffirmed in *Stock Pot Restaurant, Inc. v. Stockpot, Inc.,* 737 F.2d 1576, 1578–79, 222 USPQ 665, 666–67 (Fed.Cir.1984), are governed by the clearly erroneous standard of review. But "the issue of likelihood of confusion is the ultimate conclusion of law to be decided by the court". *Giant Food, Inc. v. Nation's Foodservice, Inc.,* 710 F.2d 1565, 1569, 218 USPQ 390, 394 (Fed.Cir.1983); *Interstate Brands Corp. v. Celestial Seasonings, Inc.,* 576 F.2d 926, 929, 198 USPQ 151, 153 (CCPA 1978).

## Determination of Likelihood of Confusion

■ Likelihood of confusion is determined from the probative facts in evidence. *In re E.I. Du Pont de Nemours & Co.,* 476 F.2d 1357, 1361, 177 USPQ 563, 567 (CCPA 1973). The Board limited its consideration to the three factors known as the "sound, sight and meaning" trilogy; *see, e.g.,* 2 J. McCarthy, *Trademarks and Unfair Competition* § 23:4 (2d ed.1984). In some instances these factors may be determinative, but the similarity between words in the respective marks is only part of the inquiry into likelihood of confusion under section 2(d) of the Lanham Act. *Du Pont* identifies thirteen contributing factors, of which we shall discuss those which are pertinent to the case before us:

### 1) The Similarity of the Goods

The marks SPICE VALLEY and SPICE ISLANDS are used for identical goods, namely "teas". Applicant's proposed registration is not limited to spiced teas, and opposer's mark is used for both spiced and unspiced teas.

### 2) The Similarity of Trade Channels

The channels of trade are identical. Both brands of tea are sold in supermarkets and grocery stores across the country.

### 3) The Circumstances of Sale and Identity of Buyers

Both products are relatively inexpensive, comestible goods subject to frequent replacement. Purchasers of such products have been held to a lesser standard of purchasing care. See Spice Islands, Inc. v. Frank Tea & Spice Co., 505 F.2d 1293, 1296, 184 USPQ 35, 37 (CCPA 1974).

### 4) The Variety of Goods on which the Mark is Used

The application for the SPICE VALLEY mark names "teas" as the goods, and the record also shows use on mulled spices for teas. Opposer uses the SPICE ISLANDS mark on a large variety of goods, including teas and spices.[1]

### 5) Actual Confusion

There is no evidence of record of the presence or absence of actual consumer confusion. Neither party has presented survey evidence.

### 6) The Similarity of the Marks in their Entireties

■ This factor encompasses the considerations of appearance, sound, connotation, and commercial impression on which the Board relied. Although applicant disclaimed the word "spice" apart from SPICE VALLEY as a whole, the marks are viewed in their entireties. Giant Food, supra, 710 F.2d at 1570, 218 USPQ at 395. Indeed, opposer's registrations of SPICE ISLANDS for teas contain no disclaimer. The Board concluded that the marks when viewed as a whole are visually and phonetically dissimilar and do not create the same commercial impression.

Each party has analyzed the "format" of the marks in support of its position. Opposer considers the format to consist of two words of fairly equal weight, the first of which is SPICE and the second of which is a topographically defined place. Applicant emphasizes that "spice" was disclaimed, leaving the word "valley" as the principal contributor to the impression of its mark. Opposer disagrees and argues that the words SPICE ISLANDS and SPICE VALLEY summon to mind similar images of remote terrain, whether valley or island. In this argument opposer is aided by the fact that applicant has adopted a seafaring image on some of its SPICE VALLEY labels.

SPICE ISLANDS, argues applicant, is a term of geographical and historical significance: the Spice Islands are known today as the Moluccas, an island group in the Malay archipelago which has been a famous source of spices and teas since the Age of Discovery. We are directed to opposer's promotional literature which discusses the history of the Spice Islands, even as it advises its customers that its spices are grown in the Sacramento Valley of California. In contrast, applicant contends that SPICE VALLEY suggests a "back-to-nature" or "Early American" image, and points to those SPICE VALLEY packages which show a rustic barn and hills on the label.

A review of the record shows that applicant took a contrary position before the

---

1. Specialty Brands' Registration No. 574,147, issued May 12, 1953 for various food seasonings and spices; Registration No. 765,595, issued February 25, 1964 for various food seasonings, spices, coffee and tea; Registration No. 654,201, issued November 5, 1957 for various food seasonings, spices, and coffee; and Registration No. 1,195,319, issued May 11, 1982 for tea.

Although Specialty Brands had argued likelihood of confusion based on a family of marks, it has not pressed this point on appeal.

trademark examiner after being advised of the pending registration THE SPICE MARKET. Applicant thereupon defined "valley" as a "depression between adjacent hills, often of a secluded or remote nature", and drew a contrast with THE SPICE MARKET's connotations of "down-to-earth value" or "old time basic quality"—images not unlike those now asserted by applicant for SPICE VALLEY. 37 C.F.R. § 2.122(b)(1) states that the file of the application "forms part of the record of the proceeding without any action by the parties and reference may be made to the file for any relevant and competent purpose". As the CCPA observed in *Interstate Brands,*

[T]hat a party earlier indicated a contrary opinion respecting the conclusion in a similar proceeding involving similar marks and goods is a fact, and that fact may be received in evidence as merely illuminative of shade and tone in the total picture confronting the decision maker. To that limited extent, a party's earlier contrary opinion may be considered relevant and competent.

576 F.2d at 929, 198 USPQ at 154. While we place only limited weight on these statements in the application file, we consider

this evidence to be relevant because it illustrates the variety of images that may be attributed to the mark SPICE VALLEY, which applicant seeks to register without restriction as to display, and the overall commercial impression it projects.

■ It is the similarity of commercial impression between SPICE VALLEY and SPICE ISLANDS that weighs heavily against the applicant as applied to identical goods. As the court said in *Spice Islands, supra:*

Of paramount interest is not the descriptive nature of SPICE, but the overall commercial impression derived by viewing the marks in their entireties .... Arguments to the effect that one portion of a mark possesses no trademark significance leading to a direct comparison between only what remains is an erroneous approach.

505 F.2d at 1295, 184 USPQ at 37.

■ As indicated above, applicant argues that its trade dress negates any similarity in commercial impression. In response Specialty Brands points out that applicant has expanded its country valley image in favor of a seafaring image on its packages of mulling spices.[2]

---

**2.** Applicant considers mulling spices to fall within the description of goods contained in its application. Both parties sell mulling spices.

The Board found this evidence to be insufficient to demonstrate an intent to trade on the reputation of SPICE ISLANDS mark, but we do not consider it for this purpose. Ordinarily, for a word mark we do not look to the trade dress, which can be changed at any time. *Vornado, Inc. v. Breuer Electric Mfg. Co.*, 390 F.2d 724, 55 CCPA 858, 156 USPQ 340, 342 (1968). But the trade dress may nevertheless provide evidence of whether the word mark projects a confusingly similar commercial impression. Applicant's labels support rather than negate that of which opposer complains: that SPICE VALLEY inherently creates a commercial impression which is confusingly similar to that of SPICE ISLANDS. When balancing the interests in a famous, established mark against the interests of a newcomer, we are compelled to resolve doubts on this point against the newcomer. *Giant Food, supra,* 710 F.2d at 1571, 218 USPQ at 395.

### 7) The Fame of Opposer's Mark

Specialty Brands has been using the SPICE ISLANDS mark for over forty years, and over one hundred spices, herbs, and seasonings are sold under the mark with annual sales of approximately $25,000,000. Teas have been sold under the SPICE ISLANDS mark since the late 1950's, generating approximately $12,000,000 worth of sales between 1957 and 1981. 220 USPQ at 1073. Specialty Brands has expended substantial sums in advertising and promotion, including point-of-sale displays, promotional literature such as recipe books, and newspaper advertisements; over the years, these sums total several millions of dollars.

Specialty Brands has been successful in protecting its mark SPICE ISLANDS against other confusingly similar marks. *See Spice Islands, Inc. v. Frank Tea and Spice Co.*, 505 F.2d 1293, 184 USPQ 35 (CCPA 1974) (SPICE TREE); *Spice Islands Co. v. Spice Land Products, Inc.*,

262 F.2d 356, 120 USPQ 64 (2d Cir.1959) (SPICE LAND); *Specialty Brands, Inc. v. Spiceseas, Inc.*, 220 USPQ 73 (TTAB 1983) (SPICE SEAS); *Spice Islands Co. v. Gold Seal Co.*, 136 USPQ 311 (TTAB 1962) (ISLAND SPICE MIST). The Court of Appeals of the Second Circuit stated in 1959 that the SPICE ISLANDS mark had attained secondary meaning in the marketplace "by reason of extensive advertising and use". *Spice Islands Co. v. Spice Land Products, Inc.*, 262 F.2d at 357, 120 USPQ at 65. The Trademark Trial and Appeal Board also recognized, over twenty years ago, that the mark SPICE ISLANDS has "acquired a secondary meaning and become well known in the trade and to the purchasing public as an indication of origin for spices, herbs, and related products originating with opposer". *Spice Islands Co. v. Gold Seal Co.*, 136 USPQ at 313. The Board's opinion before us does not attempt to reconcile its current position with that of past decisions.

■ The Board now holds that "[w]hatever fame opposer may have achieved for its 'SPICE ISLANDS' mark by using it for some forty years and by having made enormous sales and large advertising expenditures is of little consequence in this case." 220 USPQ at 1074. This statement is contrary to all authority. When an opposer's trademark is a strong, famous mark, it can never be "of little consequence". The fame of a trademark may affect the likelihood purchasers will be confused inasmuch as less care may be taken in purchasing a product under a famous name. *Giant Food, supra*, 710 F.2d at 1570, 218 USPQ at 394; 2 J. McCarthy, *Trademarks and Unfair Competition* §§ 11:24, 15:7 and cases cited therein.

### 8) The Number and Nature of Similar Marks on Similar Goods

Applicant introduced evidence of eight third-party registrations for tea which contain the word "SPICE", five of which are shown to be in use.[3] None of these marks

has a "SPICE (place)" format or conveys a commercial impression similar to that projected by the SPICE ISLANDS mark, and these third-party registrations are of significantly greater difference from SPICE VALLEY and SPICE ISLANDS than either of these two marks from each other.

### 9) Descriptive Usage of the Word "Spice"

Applicant introduced several exhibits to show third-party use of the word "spice". Some of these exhibits involve teas, but these use the word "spice" in a descriptive, non-trademark sense. Examples include PIKE PLACE spiced teas, spicy orange KAFFREE tea, peppermint spice MAGIC MOUNTAIN herb tea, LIPTON orange and spice tea, and BOSTON'S lemon spice tea. None of applicant's exhibits conveys a similar commercial impression to that of the SPICE ISLANDS mark.

The Board found that the evidence of third-party use and registration shows that the word "spice" has descriptive significance when used in conjunction with spiced teas. We agree. Third-party usage can demonstrate the ordinary dictionary meaning of a term or the meaning of a term to those in the trade. *Tektronix, Inc. v. Daktronics, Inc.*, 534 F.2d 915, 917, 189 USPQ 693, 694–95 (CCPA 1976). Specialty Brands does not base its opposition to the registration of SPICE VALLEY for teas on the fact that it contains the word "spice" and it has acknowledged applicant's right to describe its products as "spiced teas". But the mark SPICE VALLEY has trademark significance and is not a descriptive use of the term "spice".

■ Descriptive use of the word "spice" does not entitle applicant to use the word in a confusingly similar trademark manner. *See Squirtco v. Tomy Corp.*, 697 F.2d 1038, 1043, 216 USPQ 937, 940 (Fed.Cir. 1983) (Applicant cannot take "wholly inconsistent" position of asserting that the mark

---

**3.** Reg. No. 1,202,918 (SPICE ON ICE); Reg. No. 1,148,579 (THE SPICE MARKET); Reg. No. 1,148,578 (THE SPICE MARKET and DESIGN); Reg. No. 1,140,486 (COUNTRY SPICE); Reg. No. 1,098,938 (MARKET SPICE TEA).

is not descriptive of its goods in order to get a registration on the Principal Register and, when opposed, "assert that the opposer is interfering with ordinary language usage"). Although applicant asserts that it sells only spiced teas, its description of its goods in its application is not so limited. This fact is pertinent when evaluating the evidence of third-party registration and use of "spice", as well as when reviewing the other facts probative of a likelihood of confusion.

### Conclusion

■ We have evaluated all of the evidence relating to the possibility of confusion between these marks. We conclude that opposer has met its burden of demonstrating that there exists a likelihood of confusion between SPICE ISLANDS and SPICE VALLEY. *Sanyo Watch Co., Inc. v. Sanyo Electric Co., Ltd.*, 691 F.2d 1019, 1022, 215 USPQ 833, 834 (Fed.Cir.1982). Our predecessor court's statement in *Planters Nut & Chocolate Co. v. Crown Nut Co., Inc.*, 305 F.2d 916, 924–25, 50 CCPA 1120, 134 USPQ 504, 511 (1962), applies here with equal force:

> The law has clearly been well settled for a longer time than this court has been dealing with the problem to the effect that the field from which trademarks can be selected is unlimited, that there is therefore no excuse for even approaching the well-known trademark of a competitor, that to do so raises "but one inference—that of gaining advantage from the wide reputation established by appellant in the goods bearing its mark," and that all doubt as to whether confusion, mistake, or deception is likely is to be resolved against the newcomer, especially where the established mark is one which is famous and applied to an inexpensive product bought by all kinds of people without much care.

*See also Giant Food, supra*, 710 F.2d at 1571, 218 USPQ at 395. The decision of the Trademark Trial and Appeal Board dismissing the opposition is reversed.

*REVERSED.*