996 F.2d 1236
 26 U.S.P.Q.2d 1919
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re MAJOR LEAGUE BASEBALL PLAYERS ALUMNI ASSOCIATION.
 No. 92-1058.
 United States Court of Appeals, Federal Circuit.
 May 18, 1993.
 
 Before NIES, Chief Judge, RICH and LOURIE, Circuit Judges.
 PER CURIAM.
 
 DECISION
 
 1
 Major League Baseball Players Alumni Association (Applicant) appeals from the August 21, 1991, decision by the Trademark Trial and Appeal Board of the Patent and Trademark Office affirming the examining attorney's refusal to register the mark shown in application serial No. 73/792,624. We reverse.
 
 DISCUSSION
 
 2
 On the scant record before us, we are unable to conclude that MAJOR LEAGUE BASEBALL PLAYERS ALUMNI and accompanying baseball player design, for association services, namely promoting the interests of former professional baseball players, is likely to cause confusion with the registered service marks MAJOR LEAGUE BASEBALL, with and without a baseball player design, for baseball exhibitions and baseball promotional activity.*
 
 
 3
 While we must recognize the descriptive phrase "major league baseball" as a distinctive mark for baseball exhibitions in view of the section 2(f) registration, the words of its mark are not thereby precluded from all other uses by others in marks of their own. Registration on the Principal Register under this section merely recognizes that, as used in connection with specific services, the descriptive words have come to identify a single source for those particular services. In view of the wide disparity in the services set forth in the application and those of the registrations, together with the differences in both the words and designs of the respective marks, we hold that the board legally erred in its decision upholding the examiner's rejection. On the basis of the registrations and the application alone, we are unable to uphold the board's decision that the marks are likely to cause confusion.
 
 
 4
 RICH, Circuit Judge, concurring.
 
 
 5
 I join the unanimous panel decision to reverse the refusal to register herein, but I am unable to join a majority "per curiam" opinion which states only generalized reasons for its inability to "uphold the board's decision." Though the record is scant indeed, the Examining Attorney and the Board stated their reasons at length. My reasons for disagreement are extensive and I state them below. (Disregard a few inappropriate uses of the editorial "we.")
 
 
 6
 This appeal involves baseball terminology, and until we know what the term "major league baseball" actually means to the baseball cognoscenti on the North American continent, who constitute a large segment of the population, we cannot correctly decide it.
 
 
 7
 The record in this case provides us with very little information. This is not a dispute between rival claimants to a service mark registration. We deal only with an ex parte rejection of an application to register a service mark which is primarily a design, associated with some words which the Examining Attorney has insisted are totally descriptive, namely, "Major League Baseball Players Alumni." The applicant is a non-profit corporation of the District of Columbia named the Major League Baseball Players Alumni Association. On this appeal, after contesting the point in the PTO, it has finally agreed that the words in its mark are all descriptive and has expressed its willingness to disclaim them all.
 
 Applicant's Mark and Services
 
 8
 The mark presented to the PTO in appellant's application, claiming use since March 1983, appears as follows:
 
 
 9
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 10
 The named services in the application, as amended and approved by the Examining Attorney, are: "Association services, namely promoting the interests of former professional baseball players." The issue before us is, therefore, whether the above mark is registrable for those services notwithstanding the grounds asserted in the final rejection by the Examining Attorney which was affirmed by the Board.
 
 The Rejections
 
 11
 (1) Disclaimer
 
 
 12
 As the appeal came to us, there were two outstanding rejections. As already stated, the Examining Attorney insisted that the applicant disclaim all the wording in its mark "because this wording describes the group members to whom the services are directed," citing 15 USC 1056, § 6 of the Lanham Act. The Examining Attorney amplified his position in his brief, saying:
 
 
 13
 The applicant's assertion that the wording PLAYERS ALUMNI is not descriptive is incorrect. The members of the association are former professional athletes, and they are now ALUMNI of that group. There is no wording that is not descriptive. The entire phrase must be disclaimed. [Emphasis added.]
 
 In affirming, the Board wrote as follows:
 
 14
 Applicant's membership comprises former major league baseball players, i.e., "alumni." Thus, the words MAJOR LEAGUE BASEBALL PLAYERS ALUMNI, in their entirety, immediately describe the membership composition of applicant's association. Applicant's services promote the interests of players who are major league baseball alumni. As such, the words are merely descriptive of applicant's services within the meaning of section 2(e)(1) of the Act. [Footnote omitted, emphasis added.]
 
 
 15
 Applicant's brief in this court renders this disclaimer issue moot by conceding its willingness to disclaim all the words. It cannot, however, enter a disclaimer in this court but may do so only in the PTO and seeks a remand for that purpose. That will dispose of the disclaimer issue and we need not discuss it further.
 
 
 16
 (2) Likelihood of Confusion
 
 
 17
 The sole remaining issue before us, therefore, is, broadly speaking, likelihood of confusion under § 2(d) of the Trademark Act, 15 USC 1052(d), which reads, in pertinent part, as follows:
 
 
 18
 No trademark by which the goods [or services] of the applicant may be distinguished from the goods [or services] of others shall be refused registration on the principal register unless it--
 
 
 19
 * * *
 
 
 20
 (d) Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office ... as to be likely, when used on or in connection with the goods [or services] of the applicant, to cause confusion, or to cause mistake, or to deceive
 
 
 21
 ....
 
 
 22
 Clearly, we must make two comparisons as to each reference: (1) between applicant's mark and the registered mark, and (2) between applicant's services and the registrant's named services. Furthermore, we must consider these matters in the context of the marketplace or marketplaces where the users, or even the mere beneficiaries, of the respective services are to be found, i.e., those who might be confused, deceived, or caused to be mistaken about the source or sponsorship of the services. To do this, we have to determine what the impact on those persons is likely to be for, as we have often observed, the question is not whether people are going to confuse the marks but whether the marks are likely to confuse people, as § 2(d) expressly provides. In re West Point-Pepperell, Inc., 468 F.2d 200, 175 USPQ 1558 (CCPA 1972).
 
 
 23
 We determine the issue of likelihood of confusion de novo as an ultimate question of law. In re Hearst Corp., 25 USPQ 2d 1238, 1239 (Fed.Cir.1992); Specialty Brands, Inc. v. Coffee Bean Distributors, Inc., 748 F.2d 669, 671, 223 USPQ 1281, 1282 (Fed.Cir.1984). McCarthy on Trademarks and Unfair Competition, 3d Ed. § 21.04[b].
 
 The References
 
 24
 In support of his § 2(d) rejection, the Examining Attorney has cited only two registrations, both now owned by a New York corporation named Major League Baseball Properties, Inc., about which the record in this case provides no information other than the fact that its former name was Major League Baseball Promotion Corporation. The registrations are:
 
 
 25
 (1) Reg. No. 955,967, issued to Major League Baseball Promotion Corporation on August 17, 1968 of the service mark:
 
 
 26
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 27
 The words "Major League Baseball" are disclaimed apart from the mark as shown.
 
 
 28
 For: PROMOTING THE SPORT OF BASEBALL, INCLUDING ITS VIEWING BY THE GENERAL PUBLIC, BY ARRANGING FOR THE LICENSING OF ITS TRADEMARK TO MANUFACTURERS FOR USE IN CONNECTION WITH GOODS, SUCH AS SPORTING EQUIPMENT, FOODS, WEARING APPAREL AND NOVELTIES.
 
 
 29
 (2) Reg. No. 1,538,807, issued to Major League Baseball Properties, Inc., by change of name from Major League Baseball Promotion Corporation, on March 7, 1989, claiming first use in 1921, granted under Section 2(f), for the service wordmark
 
 
 30
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 31
 The word "BASEBALL" is disclaimed.
 
 
 32
 For: ENTERTAINMENT SERVICES IN THE NATURE OF BASEBALL EXHIBITIONS.
 
 
 33
 Aside from the above two registrations and appellant's application, the only other information of record before us consists of five pages from specimens filed by appellant with its application showing use of its mark and taken from its official newsletter entitled Baseball Alumni News and a return mailing envelope bearing appellant's mark.
 
 
 34
 What Does "Major League Baseball" Mean?
 
 
 35
 Appellant contends that the terms "major league" and "major league baseball" are merely descriptive. The PTO, while also saying they are descriptive, inconsistently insists that they must be given significance on the § 2(d) issue because of the second registration. We therefore find it necessary to investigate the true status of the terms as part of the language, i.e., descriptiveness, in order to determine the likelihood of confusion issue. At the same time we investigate the meaning of "minor league." To that end, we turn to the usual judicially noticeable sources, dictionaries and encyclopedias. See Federal Rules of Evidence, Rule 201. We find the following:
 
 
 36
 Webster's New International Dictionary, 2d Ed. (1973):
 
 
 37
 major league. Baseball. Either of two principal leagues, or associations, of professional baseball clubs in America--the one known as the National League (organized in 1876) the other as the American League (organized in 1900).-- major leaguer, n.
 
 
 38
 minor league. Any league or association of professional clubs in a particular sport, as baseball or ice hockey, other than the recognized major league or leagues. See MAJOR LEAGUE. U.S. & Can.--minor leaguer, n.
 
 
 39
 Webster's Seventh New Collegiate Dictionary (1963):
 
 
 40
 major league n: a league of highest classification in U.S. professional baseball; also: a league of major importance in any of other various sports.
 
 
 41
 minor league n: a league of professional clubs in a sport other than the recognized major leagues.
 
 
 42
 Random House Dictionary of the English Language (1967):
 
 
 43
 major league, 1. either of the two main professional baseball leagues in the U.S. 2. a league of corresponding stature in certain other sports, as ice hockey, football, or basketball.
 
 
 44
 minor league, U.S. any association of professional sports teams other than the acknowledged major leagues, esp. when the member teams are associated with or controlled by major league teams which use them as training and proving teams for promising players--minor league, adj.
 
 
 45
 The American Heritage Dictionary of the English Language (1969)
 
 
 46
 major league. 1. Either of the two principal groups of professional baseball teams in the United States: The American League or the National League (both of which see). 2. Any league of principal importance in other professional sports, such as basketball, football, or ice hockey.
 
 
 47
 major-league. adj. In a leading position; holding high rank: Car rental is now a major-league business. Also "big league."
 
 
 48
 minor league. Any league of professioanl sports clubs, especially baseball, not belonging to the major leagues.
 
 
 49
 The Columbia Encyclopedia, 2d Ed.1950, in its article under "baseball" contains the following illuminating bits:
 
 
 50
 Since 1903 the leading teams--the pennant winner--of the two major leagues have met in an annual series of games to decide the world's championship. [World Series.]
 
 
 51
 In 1900 the Western League changed its name to the American League and three years later gained recognition as the second major league.
 
 
 52
 An attempt to form (1914-15) a third league--the Federal League--ultimately failed.[1]
 
 
 53
 Twenty-five years later, the 4th edition of the same publication, titled The New Columbia Encyclopedia (1975), in an amplified article on baseball occupying over two-thirds of a page, stated (emphasis added):
 
 
 54
 The National Association of Baseball Players, the first governing body of the sport was formed in 1858.... Today there are two main professional baseball associations that together form the major leagues, along with approximately 20 associations of lesser teams that make up the minor leagues. The older of the two major leagues, the National League (organized in 1876), is at present made up of [12 named clubs]. In 1900 the Western League regrouped as the American League and three years later gained recognition as the second major league. The American League is composed of [12 named clubs].
 
 
 55
 Not once in the entire article is the term "major league" used otherwise than as it is used in the above quotation, i.e., other than in a purely descriptive sense indicating either the American League or the National League or their member clubs, consonant with the dictionary definitions.
 
 
 56
 The same is true of the renowned Encyclopaedia Britannica which has published extensive articles on baseball and the history of its development and organization. The following excerpt is from the 1942 edition, Vol. 3, page 161. After reviewing the evolution of organized professional baseball from a purely amateur sport, including the creation of the National League and later of the American League, the article says (all emphasis added):
 
 
 57
 Amateur baseball is played universally throughout the United States. There is no authentic census to be had of the players who follow it, but there is barely a hamlet in the country that has not a baseball nine. In scores of towns and cities there are local leagues patterned upon the methods of the major leagues. The members of these city leagues play for amusement and not always for a share of gate receipts. The playing rules of the game as used by the professionals are followed by the amateurs without demur.
 
 
 58
 Modern Government of Baseball.--The classification of baseball is divided into major and minor leagues. There are two major leagues, each of which has its own organization. There is no fixed limit to the number of minor leagues. All minor leagues are controlled by one association and subscribe to general rules. The two major leagues have eight clubs each. Boston has one club in each major league; so also have New York, Chicago, St. Louis and Philadelphia. Washington, Pittsburgh, Brooklyn, Cleveland, Cincinnati and Detroit each have one club only. Minor leagues are grouped in classes dependent upon the size of the population of the cities in that territory which they include. The highest class is AA. From that they range downward to Classes A, B, C and D.
 
 
 59
 "Organized baseball" in the United States is the general designation given to associations of professional clubs which are merged into leagues under one administration and executive. Organization became necessary to protect club franchises which are based on territorial monopoly, and also to protect investments in players.
 
 
 60
 * * *
 
 
 61
 In 1905 a formal post-season series of match games, known as the World Series, was established between the championship clubs of each major league.
 
 
 62
 The latest edition of Britannica was published in 1986 under the title The New Encyclopaedia Britannica and has two sections: Micropaedia, Ready Reference, and Macropaedia, Knowledge in Depth. Each has an item on baseball; but the latter, covering the subject in depth, has some passages of particular interest on usages of "major league." It refers to
 
 
 63
 the Major League Baseball Players Association, founded in 1953 but largely ineffectual until 1966, when it hired as executive director Marvin Miller, a former labour union official who had also been active in government for labour-management relations. A successful negotiator, he established players' rights and benefits contractually and established grievance procedures with recourse to impartial arbitration.
 
 
 64
 This association is the labor union of professional players of the game. In the next paragraph there is a reference to litigation commenced in 1970 in which the plaintiff was a player by the name of Curt Flood, supported by the Players Association, which hired as its attorney former Supreme Court Justice Arthur Goldberg, and the defendants were "the commissioner [of baseball], the two major league presidents and the major league clubs." As is well known in baseball fields, this suit was finally decided in the Supreme Court in 1972 in Flood v. Kuhn, 407 U.S. 258, opinion by Mr. Justice Blackmun, when for the third time the Court held that professional baseball, in spite of its cartel-like structure and activities, is exempt from the antitrust laws. On pages 264 and 265, Justice Blackmun refers to Flood's "major league career," a "major league team," and "the two major leagues, and the 24 major league clubs." Justice Marshall, dissenting at page 288, starts his opinion with a reference to Flood as "a major league baseball player."
 
 
 65
 Returning to Britannica, in addition to the Major League Baseball Players Association, it also explains the formation, in 1969, of "the Major League Umpires Association."
 
 
 66
 The following passage at Vol. 28, page 139 of the Macropaedia sheds further light on the major leagues (emphasis added):
 
 
 67
 The minor leagues. Created by supply and demand in the days when the two major leagues were approaching their agreement in 1903, the minor leagues enjoyed considerable attendance, especially in such areas as the West Coast, which had no major league clubs until the 1950s. The minor leagues became the training grounds for players and managers aiming at spots with major league clubs and refuges for older players. Despite the loss of attendance in the 1930s, in the 1940s about 60 minor leagues operated in more than 400 cities in the United States, Canada, Mexico, and Cuba and had attendance of nearly 42,000,000. In the 1960s the number of leagues declined to 20 in about 130 cities with 10,000,000 in attendance. Increased radio and television coverage of the major leagues was partly to blame for the drop. For 1963, the leagues were classified by population into AAA (triple A), AA (Double A), A, and Rookie leagues. All minor league clubs were heavily subsidized by major league clubs, who controlled virtually all the players.
 
 
 68
 As the article says at another point, "With the failure of the Federal League rebellion after 1915, the minor leagues, while attracting sizable crowds in the early years, ultimately became the training grounds (farm teams) for the major league teams." Thus, we see how it is that the major league clubs manage to get the best baseball players and maintain what one dictionary, earlier cited, calls the "highest classification in U.S. professional baseball."
 
 
 69
 To sum up on what is taught by the sources from which we have excerpted the few bits set out above, the organization of professional baseball is as follows: Professional baseball is broadly divided into two parts, major league and minor league. Major league baseball is played by teams belonging to or employed by clubs which belong to owners who make the contracts with the players. Each club is an independently operating unit. Each club belongs to one of the two major leagues, National (NL) or American (AL). There are now 14 clubs in each major league. During the season, April-October, the NL member clubs play each other to see who wins the NL pennant and the AL clubs do the same. Then the pennant winners in each league play each other in the World Series. Millions of fans watch the games. They have no doubts about where their entertainment is coming from. They know what the system is. They know what major league baseball is. They are, from what we have been able to observe, an extraordinarily knowledgeable group of people about what they are viewing and where their entertainment is coming from.
 
 
 70
 Major league baseball does not come from a single source like the product of a manufacturing company; it is not like a Broadway show brought to town by a stock company; it is a sporting event being played live by two teams from either or both of the two major leagues. It is "major league baseball" and that is its name. It could come from any of the now 28 clubs constituting the National and American Leagues. It certainly is not coming from the owner of the two registrations, Major League Baseball Properties, Inc., whose interests the PTO thinks it is protecting by refusing to register applicant's mark. The people the PTO believes may be confused by concurrent use of appellant's mark and the marks of the two cited registrations are unlikely to be aware of registrations on file in the PTO. These registrations, per se, are of no significance in determining whether appellant's mark when in use, is likely to cause confusion.
 
 
 71
 All the evidence of what is common knowledge points to one conclusion: "major league baseball" is part of the language of this country, purely descriptive, and the name of a category of professional organized baseball to be contrasted with minor league professional baseball, amateur baseball, college baseball, high school baseball, Little League baseball, and the like. Many decades ago it became so listed in the dictionaries.
 
 
 72
 We now turn to a consideration of the individual reference registrations with the foregoing as background.
 
 The Cited References
 
 73
 (a) No. 955,967
 
 
 74
 This is the registration of the silhouette of the head and shoulders of a baseball player swinging at a ball with his bat, a design mark including the disclaimed words MAJOR LEAGUE BASEBALL beneath the rectangular panel, which words are sufficiently closely associated with the picture to constitute a part of the design. Since, as we have determined, the words are merely descriptive, nobody has a proprietary interest therein and they are to be considered merely as part of the design.
 
 
 75
 Applicant's mark, the silhouette of three full-length baseball players swinging bats, also with words beneath, which are to be disclaimed in toto, is also a design mark. Our problem is to compare the designs, compare the named services, and make a judgment about whether their concurrent use would be likely to cause confusion, cause mistake, or deceive under § 2(d).
 
 
 76
 This reference names services consisting of "promoting" baseball and its viewing by licensing the registered mark to manufacturers of sporting equipment, clothing, foods, and "novelties," the apparent objective being to associate such merchandise with major league baseball in the minds of the purchasers with the undoubted dual objective of attracting some of the millions of baseball fans as purchasers of the merchandise and, at the same time collecting royalties from the manufacturers for doing so, thus helping the manufacturers to sell their wares to baseball fans, a neat merchandising gimmick, and in that way promoting baseball. Applicant-appellant, on the other hand, renders services in an entirely different field, not selling merchandise but "promoting the interests of former professional baseball players." It is operating an "alumni" association presumably for the benefit of retirees from a professional sport and those associated with them--neither a manufacturing nor a merchandising operation. The specimens indicate that appellant publishes the equivalent of an alumni news magazine which also promotes all sorts of events of interest to retirees from professional baseball.
 
 
 77
 One need only view the designs to appreciate that they are distinctively different, having nothing in common other than depictions of baseball players and, regarding the word portions of the marks, having in common only the descriptive term "major league baseball," which is not a specific source indicator.
 
 
 78
 Our view is that because of the cumulative differences in the marks and the differences in the services, concurrent use of the two marks would not be likely to cause confusion or mistake or to deceive.
 
 
 79
 (b) No. 1,528,807
 
 
 80
 This is the registration of MAJOR LEAGUE BASEBALL, "baseball" disclaimed, for "entertainment services in the nature of baseball exhibitions." It was granted under § 2(f), 28 USC 1052(f) of the Lanham Act, which, in itself, is confirmation of our determination that the term is descriptive because § 2(f) is the statute that permits registration of some descriptive terms upon proof that they "have become distinctive of the applicant's goods [or services] in commerce." We know nothing of how the registrant complied with § 2(f) or in what manner or where or when it provides "entertainment services in the nature of baseball exhibitions." We have not been apprised of the contents of its application to register. We do know, however, as set forth above, what major league baseball is and who produces it and that, as the term is used, descriptively, in the word portion of appellant's mark it cannot possibly refer to any service activities with respect to which the registrant could have established distinctiveness for its "entertainment services," whatever they are. Major league baseball is today produced, or played or provided by teams from 28 independent clubs organized into two leagues.
 
 
 81
 In any case, the applicant here is not engaged in entertainment services in the nature of baseball exhibitions but in "association services" for "alumni" of professional baseball. It seeks no exclusive rights in the part of its design mark consisting of words, including the descriptive term "major league baseball." In Sweats Fashions Inc. v. Pannill Knitting Co., 833 F.2d 1560, 4 USPQ2d 1793 (Fed.Cir.1987), it was held on the authority of numerous precedents that "the issue of likelihood of confusion is one of law." It was also there decided that
 
 
 82
 there is no likelihood of confusion between Fashion's and Pannill's marks within the meaning of section 2(d) despite the commonality of the [descriptive] word "sweats" in both marks.
 
 
 83
 We believe that the principle applied there also applies here to support the holding that there is no likelihood of confusion or mistake from concurrent use of applicant's design mark and the so-called service mark of Reg. No. 1,528,807.
 
 
 84
 These are my reasons for reversal. The case should, of course be remanded to the PTO with instructions to permit the applicant to enter the agreed-upon disclaimer, whereupon, no other objection appearing, the application should be passed to publication.
 
 
 
 *
 Registrant's Reg. No. 1,528,807 was issued under section 2(f) with a disclaimer of BASEBALL only; Reg. No. 955,967 contains a disclaimer of all words
 
 
 [1]
 See, Federal Baseball Club of Baltimore, Inc. v. National League of Professional Baseball Clubs et al., 259 U.S. 200 (1922)