5-27-98

THIS OPINION IS CITABLE
AS PRECEDENT OF
THE T.T.A.B.

27 MAY 1998

Hearing:
June 9, 1997

Paper No. 37
SIMMS/MD

U.S DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE


Trademark Trial and Appeal Board


Uncle Ben's, Inc.
v.
Stubenberg International, Inc.


Opposition No. 93,750
to application Serial No. 74/270,694
filed on April 29, 1992


Eileen E. Kennedy of Fitzpatrick, Cella, Harper & Scinto for Uncle Ben's, Inc.

Stubenberg International, Inc., pro se.


Before Simms, Cissel and Quinn, Administrative Trademark Judges.

Opinion by Simms, Administrative Trademark Judge:

Uncle Ben's, Inc. (opposer) has opposed the application of Stubenberg International, Inc. (applicant), a Maryland corporation, to register the mark BEN'S BREAD (the word "BREAD" disclaimed), for bread mixes composed primarily of flour and other ingredients for bread baking.[1] In the

---

[1] Application Serial No 74/270,694, filed April 29, 1992, based upon applicant's intent to use the mark in commerce under Section 1(b) of the Act, 15 USC §1051(b) During the prosecution of this application, applicant submitted an amendment to allege use asserting use in commerce since November 6, 1992 That amendment has been accepted.

notice of opposition, opposer asserts that for many years it has manufactured, distributed and sold food products including rice products under the mark UNCLE BEN'S. More particularly, opposer asserts that it has used this mark since at least as early as 1937 and has alleged ownership of ten federal registrations covering this mark. Opposer asserts that it has extensively advertised and promoted its products under this mark by way of television and print advertising, and by its packaging, as well as by promotional and premium items. As a result of opposer's long use and promotion, opposer asserts that the mark UNCLE BEN'S has become famous. Further, opposer alleges that applicant's mark so resembles opposer's mark as to be likely to cause confusion, to cause mistake or to deceive. Applicant in its answer has denied the essential allegations of the notice of opposition.

Opposer has submitted a notice of reliance upon its pleaded registrations and has submitted a testimony deposition (along with exhibits). Applicant has filed a "notice of reliance" upon its application.[-] The parties have submitted briefs and an oral hearing was held.

---

[-] This notice was unnecessary. By virtue of Trademark Rule 2 122(b), the file of applicant's application forms part of the record without any action by applicant

2

Among the registrations opposer has relied upon are the following:  Registration No. 437,176, issued March 9, 1948 (under the Act of 1905), twice renewed, covering the mark UNCLE BEN'S for rice; Registration No. 740,123, issued October 30, 1962, renewed, covering the mark UNCLE BEN'S for food mixes consisting of rice, dehydrated vegetables, chicken or meat extracts, spices, seasonings and other food ingredients; Registration No. 903,134, issued November 24, 1970, renewed, covering the mark UNCLE BEN'S for, among other things, poultry dressing mix and peanut-pretzel snack; and Registration No. 1,695,480, issued June 16, 1992, covering the mark UNCLE BEN'S for gravies and sauces.

Opposer took the testimony of Mr. William Schultz, opposer's franchise director.  Opposer began use of the mark UNCLE BEN'S in 1937 and opposer's first registration issued in 1948.  Opposer's mark has been used on a variety of food products including rice, food mixes which combine rice with other ingredients, rice pudding, soup mixes, marinades, sauces and stuffing mixes consisting primarily of bread. Also, opposer at one time made and sold a pasta product, but that product is no longer on the market.  Opposer's annual sales under the mark in recent years have exceeded $150 million per year.  In addition, opposer annually spends in excess of $5 million advertising its products.  The prices for opposer's goods range from less than one dollar to about

3

nine dollars, which is the price of the largest bag of rice which opposer sells. Opposer's goods are sold throughout the United States in grocery stores, convenience stores and "super centers." Opposer's products are also available in restaurants. They are promoted in print advertisements, by inserts, coupons, trade circulars, point-of-purchase advertisements, and on radio and television.

Essentially, opposer argues that applicant's mark BEN'S BREAD so closely resembles its mark UNCLE BEN'S that confusion is likely. In this regard, opposer argues that the presence of the generic word "BREAD" is not sufficient to distinguish applicant's mark, and that "BEN'S" is the dominant portion of both marks. With respect to the goods, opposer argues that it has used its mark not only for rice, but also on a variety of foods and food mixes including rice mixes, soup mixes, stuffing mixes and sauces. Opposer points out that applicant's products are also mixes. Opposer maintains that its goods are sold in various sections of food stores including the rice section, the beans section (beans and rice product), the sauce section, the soup section, the bread and stuffing section, the pudding section and the prepared dinner section.

Because opposer's goods have been sold for over 50 years and have been the subject of large sales volumes and significant advertising expenditures, opposer argues that

4

its mark is "one of the strongest and most recognizable trademarks in the United States." Brief, 9. Opposer also contends that its goods are relatively inexpensive and that purchasers generally exercise a lower standard of care in their purchasing decision when it comes to relatively inexpensive food products. Opposer also points out that there is no evidence whatsoever with respect to any third-party use of similar marks to demonstrate any alleged weakness in its pleaded marks. Also, opposer argues that any argument with respect to the lack of instances of actual confusion is of no consequence when there is no evidence of use or advertising by applicant in this record. Finally, opposer argues that any doubt must be resolved against the newcomer.

Applicant, on the other hand, maintains that there is no likelihood of confusion because each party uses a different word with the word "BEN'S" ("UNCLE" versus "BREAD"); that opposer's food products will not be "confused with a bread mix product" and "that consumers shopping for stuffing will [not] confuse their purchase with a box of bread mix, which must be baked to create a loaf of bread." Applicant's brief, 4. Moreover, according to applicant, opposer has presented no evidence that its goods are sold in the same stores as applicant's product. Applicant also contends that confusion is unlikely because of its use of

5

the images of two Caucasian children on its packages, in contrast to opposer's use of the image of an African-American man.  Applicant also argues that the strength of opposer's marks is "irrelevant," that opposer's use of its marks on a wide variety of food products is irrelevant, as is the absence of similar third-party trademarks.  Finally, applicant argues that the absence of any evidence of actual confusion to date is a strong indication that confusion is unlikely.

The sole issue for our resolution is likelihood of confusion.  Priority is not an issue in view of opposer's valid and subsisting registrations.  See King Candy Co. v. Eunice King's Kitchen, 496 F.2d 1400, 182 USPQ 108 (CCPA 1974).  Even without the pleaded registrations, opposer's priority is clear from the testimony of Mr. Schultz and the exhibits of record.

Upon careful consideration of this record and the arguments of the parties, we agree with opposer that confusion is likely.  Turning first to the marks, while we must consider the marks in their entireties and may not improperly dissect them, we may give more weight in the likelihood-of-confusion analysis to the "dominant" elements. See In re National Data Corp., 753 F.2d 1056, 224 USPQ 749,

---

' In its reply brief, opposer argues that most of its registrations do not contain the image referred to by applicant and that the portrait of an African-American man is not always used on opposer's packaging or advertising.

751 (Fed. Cir 1985) and Giant Food, Inc. v Nation's Foodservice, Inc , 710 F.2d 1565, 218 USPQ 390, 395 (Fed. Cir. 1983). When a portion of a mark is descriptive or generic, that portion may, of course, be afforded less significance. While there are some obvious differences between the marks UNCLE BEN'S and BEN'S BREAD, they both contain the possessive form of the name "BEN". The generic word "BREAD" does little to distinguish applicant's mark from opposer's. Moreover, while applicant's mark is presented for registration in typed format, we note that applicant has chosen to use its mark with the name BEN'S prominently displayed at the top of its packaging.



Further, applicant has also chosen to display its mark in the color blue, the same color that opposer consistently uses to display its mark UNCLE BEN'S. See Specialty Brands

Inc. v. Coffee Bean Distributors, Inc , 748 F.2d 669, 223 USPQ 1281, 1284 (Fed Cir. 1984) "[T]he trade dress may nevertheless provide evidence of whether the word mark projects a confusingly similar commercial impression.")

Contrary to applicant's argument, the fame of opposer's mark "UNCLE BEN'S" for rice products is relevant to the consideration of likelihood of confusion. See Kenner Parker Toys Inc. v. Rose Art Industries Inc., 963 F.2d 350, 22 USPQ2d 1453 (Fed. Cir. 1992), cert. denied, 113 S.Ct. 181 (1992)(FUNDOUGH for modeling compound held confusingly similar to PLAY-DOH); Nina Ricci S.A.R L. v. E.T.F. Enterprises Inc., 889 F.2d 1070, 12 USPQ2d 1901 (Fed. Cir. 1989)(NINA RICCI, MADEMOISELLE RICCI, SIGNORICCI AND CAPRICCI held confusingly similar to VITTORIO RICCI); Kimberley-Clark Corp. v. H. Douglas Enterprises, Ltd., 774 F.2d 1144, 227 USPQ 541 (Fed. Cir. 1985) (DOUGIES for disposable diapers held confusingly similar to HUGGIES) and Specialty Brands Inc. v. Coffee Bean Distributors, Inc., supra (SPICE VALLEY held confusingly similar to SPICE ISLANDS for teas).

With respect to the goods, the fact that opposer applies its mark to a variety of products including rice mixes and stuffing mixes consisting primarily of bread is significant. In our view, this makes it more likely that purchasers, aware of opposer's use of UNCLE BEN'S on a

variety of food products, when seeing applicant's mark used in connection with a bread mix, are likely to believe that this product is also being produced or sponsored by opposer In this regard, we point out that the issue of likelihood of confusion involves more than simply a purchaser, because of the similarity of the marks, mistakenly selecting applicant's bread mix when intending to purchase a box of opposer's rice or other food product, which we find unlikely.  Section 2(d) of the Trademark Act also covers situations where the public, because of the similarity of the marks, is likely to believe that a recognizably different product, because of the similarity of the marks, emanates from, or is authorized, sponsored or licensed by the prior user or registrant.  See J  Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §23.01[4][d] (4th ed. 1998).  Further, the fact that we are here dealing with relatively inexpensive food products means that the average purchaser may exercise less care in the purchasing decision.  See In re Martin's Famous Pastry Shoppe, Inc , 748 F.2d 1565, 223 USPQ 1289, 1290 (Fed. Cir. 1984).  The fact that applicant has introduced no evidence concerning the extent of its use also undercuts its argument that there have been no instances of actual confusion.  This is because the lack of instances of actual confusion must be seen in the context of any opportunity for confusion to have arisen.

See *Nina Ricci*, supra, 12 USPQ2d at 1903 That is to say, here we have no evidence of the nature or extent of applicant's use of the mark it seeks to register. Without any information about where and how applicant has used and promoted its mark, we have no way of determining if the apparent lack of instances of actual confusion is significant. If there has been no real opportunity for confusion to take place because of applicant's very limited use of its mark in an area remote from where opposer sells its products, for example, or in a completely different retail environment, for another, the lack of evidence of instances of actual confusion would be of far less significance than would be the case if applicant's use had been substantial and the trading areas of the parties had overlapped for a period of time. Finally, we point out, as did opposer, that there is

> no excuse for even approaching the well-
> known trademark of a competitor and that
> all doubt as to whether confusion,
> mistake, or deception is likely is to be
> resolved against the newcomer,
> especially where the established mark is
> one which is famous.

Planter's Nut & Chocolate Co. v. Crown Nut Co., Inc., 305 F.2d 916, 134 USPQ 504, 511 (CCPA 1962).

10

Decision:  The opposition is sustained and registration
to applicant is refused

R. L. Simms

T. J. Quinn
Administrative
Trademark Judges,
Trademark Trial and
Appeal Board

Cissel, Administrative Trademark Judge, dissenting:

I disagree with my colleagues, and would hold that
confusion is not likely in this case.  Although analysis of
all the factors enumerated in the cited duPont case results
in a long list of factors favoring opposer and a very short
list in favor of applicant, this should not be determinative
of the outcome of this proceeding.

Simply put, when opposer's mark is accorded the
extended range of protection to which it is entitled because
of its fame, opposer's famous mark is still "UNCLE BEN'S,"
not "BEN'S RICE," much less just "BEN'S," and the product
for which it is famous is rice, not the products opposer has
expanded its product line to include, such as stuffing mix
or sauces.  Applicant's mark, when considered in its

11

entirety, is not so similar to opposer's mark, in its entirety, that it is likely to cause confusion.  The marks do not look alike, sound alike, .r have similar connotations  They create commercial impressions which are quite different, and further, these marks are used on different kinds of products.

The fact that both marks include the possessive form of the given name "BEN" is just not enough to convince me that consumers will confuse the two.  To hold otherwise is to ignore the obvious significance of the second component of each of these marks, i e., the word "UNCLE" in opposer's mark and the word "BREAD" in the mark of applicant.  While the descriptive term "BREAD" in applicant's mark has little source-identifying significance, it nonetheless has a role in creating the commercial impression of the mark, and the word "UNCLE" in opposer's mark is at least as important as the word "BEN'S" is in that mark.  When these two marks are considered in their entireties, they are not very similar because they have different commercial impressions, especially in connection with the different goods of these parties.  Applicant's mark, "BEN'S BREAD," would make no sense in connection with rice, but it has an obvious connotation as applied to the bread mixes with which applicant uses it.

12

If food buyers were to be presented with the famous "UNCLE BEN'S" mark on bread mixes, they might assume that opposer has expanded its line of food products to include bread mixes This is not the case here, however It is mere speculation to conclude that a consumer would regard applicant's mark as an indication that opposer has expanded its line, but is for some reason using only part of its famous mark in connection with the new product "UNCLE BEN'S" could be one of the most famous trademarks in this country in the field of food products. Consumers would expect the owner of a such a famous mark to use it on new products in order to bring to those goods the goodwill associated with its famous mark. Consistent with this point, this record shows opposer's use of "UNCLE BEN'S" on opposer's products. We have no evidence that opposer uses any different marks incorporating only one of the two words in its famous "UNCLE BEN'S" trademark on any of its goods. Further, there is no evidence that opposer, or its customers, for that matter, uses the name "BEN'S" as a shortened form of opposer's famous mark.

13

In summary, when they are considered in their entireties and in connection with the respective goods of the parties, the marks "BEN'S BREAD" and "UNCLE BEN'S" are just too different to be likely to cause confusion. For this reason, I would dismiss this opposition

R.F. Cissel
Administrative Trademark Judge
Trademark Trial and Appeal Board

27 MAY 1000

14