NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

## IN RE: P.T. ARISTA LATINDO,
*Appellant*

---

2017-1292

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 86499199.

---

Decided: November 13, 2017

---

MICHAEL A. SHIMOKAJI, Shimokaji & Associates, P.C., Irvine, CA, for appellant.

NATHAN K. KELLEY, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Joseph Matal. Also represented by THOMAS L. CASAGRANDE, CHRISTINA HIEBER, THOMAS W. KRAUSE, PHILIP J. WARRICK.

---

Before DYK, BRYSON, and REYNA, *Circuit Judges.*

PER CURIAM.

Applicant P.T. Arista Latindo ("Arista") appeals from the final decision of the Trademark Trial and Appeal

Board ("Board") affirming the examining attorney's refusal to register the mark "SENSI" ("the mark") related to goods in Class 5 (diapers), because it was likely to cause confusion with previously registered marks. We *affirm*.

BACKGROUND

Arista, an Indonesian company, filed an "intent-to-use" application under Section 1(b) of the Lanham Trademark Act, 15 U.S.C. § 1051, to register "SENSI" for use with several goods. The goods included: adult and baby diapers, as well as diaper inserts (International Class 5); industrial gloves (Class 9); various kinds of operating-room goods (Class 10); and household gloves (Class 21).The Examining Attorney issued an initial office action refusing registration for the goods in Class 5 (adult and baby diapers and diaper inserts) under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), because of a likelihood of consumer confusion as to Class 5 with two previously registered marks.

Those marks are Registration No. 2618533 for "SENSI-CARE" in standard characters for "medicated skin care preparations, namely, protectants for the prevention of skin irritation and preparations for the treatment and prevention of diaper rash," and Registration No. 3640455 for the stylized version **SENSI CARE** for "[s]kin protectant preparations, namely, medicated skin care preparations; preparations for protecting the skin from irritation, namely, pharmaceutical skin lotions; preparations for treatment and prevention of diaper rash, namely, medicated diaper rash ointments and lotions." Both of these marks are owned by Convatec ("Registrant").

Arista appealed the rejection to the Board, arguing that the marks were dissimilar, the goods were unrelated, and that there were no actual instances of consumer confusion.

Assessing the relevant confusion factors set forth in *In re E. I. DuPont de Nemours & Co.*, 476 F.2d 1357, 1361 (C.C.P.A. 1973) (the "*DuPont* factors"), the Board compared the appearance, sound, and meaning of the marks. The Board rejected Arista's argument that evidence extrinsic to the registration and application at issue could be employed to differentiate the marks.

The Board next turned to the similarities between the goods, channels of trade, and classes of customers. The Board found that the goods, specifically diapers and diaper rash cream, are related, are sold through similar channels, and the classes of customers were similar. Based on the totality of the circumstances, the Board found that the marks as a whole were similar, that there was a high likelihood of confusion with the previously registered marks relative to diaper rash cream and affirmed the rejection of Arista's marks.

Arista appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

We review the Board's legal conclusions de novo and its factual findings for substantial evidence. *In re Cordua Rests., Inc.*, 823 F.3d 594, 599 (Fed. Cir. 2016). "Within the broader question of the similarity of the marks, determinations as to the appearance, sound, connotation and commercial impression of the marks are . . . factual in nature." *In re Viterra Inc.*, 671 F.3d 1358, 1361 (Fed. Cir. 2012).

Section 1052(d) of Title 15 requires that marks not be issued when it is "likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." Likelihood of confusion under Section 2(d) is determined on a case-by-case basis, assessing the relevant *DuPont* factors established by our predecessor court. *See DuPont* 476 F.2d at 1361. Only

those factors significant to the particular mark need be considered. *Viterra*, 671 F.3d at 1361.

On appeal, Arista does not challenge many aspects of the *DuPont* analysis conducted below. Indeed, Arista does not challenge the Board's findings that the marks look and sound similar, that the goods are related, and that the channels of trade and classes of customers are similar. Rather, Arista challenges the *DuPont* factor concerning the similarity or dissimilarity of the marks as to their connotation and commercial impression. *See DuPont* 476 F.2d at 1361.

Arista specifically challenges the Board's refusal to consider extrinsic evidence that Arista uses the tagline "Sensible way of living" on its Indonesian-address website (www.sensi.co.id) when it uses the mark. Arista argues that, considering the website, customers would assume that "SENSI" in the context of their mark means "sensible," and that, in context, Convatec's marks use "SENSI" to refer to "sensitive."

Arista uses the tagline "Sensible way of living" near the mark "SENSI" at the top of the webpages. When determining the meaning of two marks, it is the marks themselves, as set forth in the application and cited registration, not extrinsic evidence, which determines likelihood of confusion. Indeed, it is well-established that the Board must only compare the mark in the prior registration with the mark in the application. "Registrability is determined based on the description in the application, and restrictions on how the mark is used will not be inferred." *In re Shell Oil Co.*, 992 F.2d 1204, 1207 n.4 (Fed. Cir. 1993). Extensive precedent supports this.[1]

---

[1]    *See In re I.AM.Symbolic, LLC*, 866 F.3d 1315, 1324 (Fed. Cir. 2017) ("The correct inquiry requires comparison of the applied-for mark . . . ."); *In re H.J. Seiler Co.*, 289

It is well-established that trade dress may not be used to prove that the commercial impressions are different, since trade dress may be changed at any time. *See Vornado, Inc. v. Breuer Elec. Mfg. Co.*, 390 F.2d 724, 727 (C.C.P.A. 1968) ("the [advertising] display of a mark in a particular style is of no material significance since the display may be changed at any time as may be dictated by the fancy of the applicant or the owner of the mark.").[2]

---

F.2d 674, 675 (C.C.P.A. 1961) (use of tagline "caterers since 1873," which was not in the application, could not be considered); *Denney v. Elizabeth Arden Sales Corp.*, 263 F.2d 347, 348 (C.C.P.A. 1959) ("In determining the applicant's right to registration, only the mark as set forth in the application may be considered . . . .") (citations omitted); *Bellbrook Dairies Inc. v. Hawthorn-Mellody Farms Dairy, Inc.*, 253 F.2d 431, 433 (C.C.P.A. 1958) ("The fact that each of the parties applies and [sic] additional name or trade-mark to its product is not sufficient to remove the likelihood of confusion. The right to register a trade-mark must be determined on the basis of what is set forth in the application rather than the manner in which the mark may be actually used.") (citations omitted).

[2] *See also Kimberly-Clark Corp. v. H. Douglas Enters., Ltd.*, 774 F.2d 1144, 1147 (Fed. Cir. 1985); *Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 674 (Fed. Cir. 1984) ("Ordinarily, for a word mark we do not look to the trade dress, which can be changed at any time.") (citations omitted); *Tuxedo Monopoly, Inc. v. Gen. Mills Fun Grp., Inc.*, 648 F.2d 1335, 1337 (C.C.P.A. 1981) (explaining that design features not inherent or specifically stated in the application are irrelevant).

We note that there is language from *Specialty Brands*, to the effect that "[o]rdinarily, for a word mark we do not look to the trade dress, which can be changed at any time . . . . But the trade dress may nevertheless provide evi-

Arista suggests that *Coach Services, Inc. v. Triumph Learning LLC*, 668 F.3d 1356 (Fed. Cir. 2012), supports the utilization of extrinsic evidence in assessing whether there is likelihood of confusion in an *ex parte* registrability proceeding. In that case, the fashion label Coach appealed from the decision of the Trademark Board's decision dismissing its opposition to Triumph Learning's applications to register the mark "COACH" for educational materials used to prepare students for standardized tests. *Id.* at 1360. The court affirmed the Board's finding that there was no likelihood of confusion between the parties' "COACH" marks, despite the fact that the two marks were identical. *Id.* at 1368–69.

The court highlighted the Board's finding that "although the marks are identical in terms of sight and sound, they differ as to connotation and commercial impression." *Id* at 1368. Arista misreads *Coach*, as neither the Board nor the court based the decision on extrinsic evidence when assessing whether the marks were similar. Both the court and the Board considered the descriptions of the goods *in the application and registration. See id.* at 1360–62 (highlighting that Triumph's applications were for educational goods while Coach's trademark registrations were for fashion products).

Arista further argues that dictionary evidence, specifically dictionary.com, shows that "SENSI" can and would be understood to mean "sensible." To be sure, "[e]vidence of the public's understanding of the mark may be obtained

---

dence of whether the word mark projects a confusingly similar commercial impression." 748 F.2d at 674. Appellant may suggest that it is inconsistent to examine trade dress for one purpose, but not for another. We need not here resolve any apparent anomaly created by the wording in *Specialty Brands*, since it is well-established that trade dress may not be used to prove absence of confusion.

from 'any competent source, such as . . . dictionaries . . .,'" *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 965 (Fed. Cir. 2015) (quoting *In re Northland Aluminum Prods., Inc.*, 777 F.2d 1556, 1559 (Fed. Cir. 1985)). The dictionary evidence here is not helpful to Arista, as dictionary.com did not actually define "SENSI" at all. Rather, dictionary.com only noted that "sensible" was an alphabetically "nearby" word, hardly evidence that proves that "SENSI" means "sensible." There is no evidence that dictionaries actually define "SENSI" as "sensible."

There is nothing in the application that indicates that "SENSI" should be understood to mean "sensible," nor does the slogan "Sensible way of living" appear in Arista's application. The word "SENSI" is spelled the same as the prior mark in the application and registration. It is clear that there is a substantial likelihood of confusion, especially in products as closely related as diapers and diaper rash cream. Nothing in the marks or goods shown in the application and registration provides a basis to find that the identical terms used by Arista and Convatec have disparate definitions or connote different commercial impressions. Substantial evidence supports the Board's decision.

**AFFIRMED**